[No. G041274. Fourth Dist., Div. Three. Nov. 19, 2009.]

In re the Marriage of LAURIE THELEN and RICHARD ANDREW KACIK.
LAURIE THELEN KACIK, Respondent, v.
RICHARD ANDREW KACIK, Appellant.

COUNSEL

Brandon & Yarc and Lisa E. Brandon for Appellant.

No appearance for Respondent.

OPINION

**SILLS, P. J.**—A spousal support order was scheduled to step down to zero in mid-February 2008. The trial court modified the order to keep the spousal support at the level it had been prior to mid-February 2008, based on the "change of circumstances" that a child support order had terminated 17 months earlier. The trial court's authority for doing so was Family Code section 4326, a relatively new statute in the Family Code.[1] The supporting spouse has brought this appeal from the order of modification.

---

[1] All undesignated statutory references in this opinion are to the Family Code.

There are times when the definition of "is" really makes a difference. This case is one of them. The key word in section 4326 is . . . is.

Section 4326 provides that:

(1) when the court has jurisdiction to order spousal support *and*

(2) "if a companion child support order *is in effect*" (italics added) then

the termination of child support because the child reaches the age of majority constitutes a change of circumstance that "may be the basis for a request for modification of spousal support."[2]

This is a case of first impression. The question of first impression is what the Legislature meant by the words "if a companion child support order is in effect," and particularly what it meant by the phrase, "is in effect." Or, put another way: How much time can elapse before *is* becomes *was*?

As we explain in detail below, the phrase "is in effect" should not be narrowly construed to deprive the family court of jurisdiction to make an order under section 4326 just because the child has already reached the age of majority, even though, under section 3601, a child support order is, technically, no longer "in effect" the day after a child reaches the age of majority. Thus a family law court is not deprived of jurisdiction to make an order under section 4326 simply because a child, for example, turned 18 a few days before the supported spouse made a request for modification under section 4326.

Rather, the statute should be broadly construed to implement its purpose, which was to allow for the possibility of modified spousal support *generally upon the event* of the discontinuation of child support. In that regard, we divine that the Legislature intended that *reasonable* contemporaneousness with the discontinuation of child support is enough to give the family law court jurisdiction to make a spousal support order under section 4326.

---

[2] Here is the complete text of section 4326:

"(a) In a proceeding in which a spousal support order exists or in which the court has retained jurisdiction over a spousal support order, if a companion child support order is in effect, the termination of child support pursuant to subdivision (a) of Section 3901 constitutes a change of circumstances that may be the basis for a request for modification of spousal support.

"(b) This section shall remain in effect only until January 1, 2011, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2011, deletes or extends that date."

Even so—the particular facts in this appeal force us to ask just how long a supported spouse may wait after a child support order is no longer "in effect" to bring a proceeding to modify spousal support under section 4326. A few months? Under the rule of general contemporaneousness, we think we are safe to say that a few months would be within the purview of the statute.

But more than a year? As we show below, by comparison to other important deadlines in the Family Code, it would do violence to the Legislature's use of the phrase "*is* in effect"—present tense—to say that a modification proceeding more than 17 months after the companion child support order ceased to be in effect was within the purview of section 4326. The definition of "is" cannot be stretched to include something that became past tense 17 months ago. Consequently we conclude that the trial court's order modifying support in this case—where the child support order ended in August 2006 and no modification request was brought until February 2008—cannot be sustained on the basis of section 4326. And section 4326 was the sole basis for the modification, so the order cannot be sustained at all.

## I. *Background*

Laurie and Richard Kacik were married in June 1983, and separated in May 1999, for a 16-year marriage. They had one child, Alexander, then age 11, born August 1988. They were divorced pursuant to a stipulated judgment filed June 8, 2001. Each was represented by counsel. The stipulated judgment provided for $1,125 a month in child support from Richard to Laurie, which was to last until Alexander reached the age of 18. Richard was also to pay Laurie $1,625 in spousal support for seven years, after which spousal support was to be reduced to zero on February 15, 2008, *but* the court was to retain jurisdiction over support until death, remarriage or further order of the court. At the time of the separation Laurie was 46 years old, not working and earning "zero," but the stipulated judgment recited that she had "the ability to earn not less than $1,000 per month in gross income." Richard was making $11,336 gross income a month.

The child support order terminated in August 2006, apparently as a result of the couple's son Alexander having reached the age of 18. About 17 months later, on February 15, 2008—the precise date that the spousal support award was scheduled to step down to zero—Laurie, represented by counsel, filed an order to show cause proceeding (commonly called an "OSC"), the main objective of which was a modification of spousal support to $2,000.[3] Laurie's

---

[3] There were two other requests: One involved a purported spousal support arrearage on the theory that Richard had unilaterally deducted "certain things" (that is literally the language in the declaration) against his past support payments, and further, that, contrary to the judgment, the legal and administrative costs of splitting certain 401(k) accounts and IRA's (individual

declaration in support of the OSC made these statements and assertions in support of her modification request:

(1) "In August 2006, child support for our son terminated."

(2) "I have attempted to become self-sufficient and presently work full time. I, however, can not find a position that pays more than my present $15.00 per hour."

(3) "If spousal support were to be reduced to zero, pursuant to the existing judgment, I would be forced to sell my residence (in the middle of a very weak market) and move out of Orange County. It would be impossible to live on my current income."

(4) "I require continued spousal support from [Richard] in order to afford the basic necessities of life."

By the time of Laurie's OSC in mid-February 2008, she had obtained full-time employment in a shop in San Juan Capistrano earning $15 an hour, was working a 40-hour week, and was 55 years old. Her declaration in support of her OSC provided no information (beyond the statement that she "could not find a position" that pays more than $15 an hour) regarding any efforts by Laurie to gain additional education or skills. Her income and expense declaration listed the completion of high school as her highest level of education.

The initial date for the hearing on Laurie's OSC was scheduled for April 21, 2008. Richard filed a responsive declaration asserting that he was paying for all the costs of Andrew's education at Cal Poly San Luis Obispo, and had relied on the 2001 judgment in undertaking to shoulder the cost of the couple's son by himself. His 2007 W-2 form showed a monthly income of $13,907 ($166,887.91 divided by 12).

The case was continued to June 23, 2008. In the meantime, on April 24, Richard's attorneys propounded a request for production of documents, basically asking for any documentation concerning Laurie's efforts to become self-supporting since the 2001 judgment. The response was that no such documents existed. That point formed the basis of a supplemental declaration

retirement accounts) should be borne by Richard. Neither issue is part of appellant's opening brief, and we deem both therefore abandoned.

from Richard's counsel filed about four days prior to the June 23 hearing, the gravamen of which was that Laurie had not really done anything to become self-supporting.

The matter was continued again to July 24, 2008, when the hearing went forward, with counsel having agreed to submit on the paperwork.

The substantive hearing began with the trial judge announcing a modified order of $1,625 before hearing argument. This is what she announced: She took the $11,336 gross per month that Richard was making at the time of the 2001 judgment and halved it, arriving at the figure of $5,668. The trial judge then declared the $5,668 figure to be the "marital standard of living." Then she found that the seven-year spousal support figure in the 2001 judgment of $1,625 did not "meet the marital standard of living," leaving Laurie $3,100 "short." That is, the $1,625 figure only made up the $3,100 shortfall by half, and that was the court's order.[4]

---

[4] Here is the relevant portion of transcript, beginning with the start of the hearing:

"The Court: Have a seat.

"In a review of the judgment in this matter, I find that father at the time of the judgment was earning $11,336 gross. Mother was earning zero; although she was imputed to have an income to earn $1,000 a month. I'm going to find the marital standard of living was $5,668 a month—marital standard of living.

"The support that mother was given at that time was the spousal support was, like, $1160?

"Ms. Brandon [Richard's attorney]: $1625.

"Mr. Decker [Laurie's attorney]: $1625.

"The Court: There was not a—there was no finding as to whether or not it met the standard of living, but I'm going to find it did not because the marital standard of living was just barely there with her imputed income of $1,000 a month and $1625 that she got for spousal support and the child support. The fact that father of his own decision deducted money from the child support, which is not allowed by law, the court has a problem with that.

"Needless to say, with the $5,668 marital standard of living and mother's present earnings of $15 an hour, which gives her a gross of $2580, she is short almost $3100; therefore, I'm going to order that the $1,625 spousal support order shall remain at this point in time, and it still does not meet the marital standard of living because she is short $3100, and we're only making that up by half that amount.

"As and for the child support arrearages, I'm going to find that it was $13,395, which does not include the 10 percent interest. I'm going to order counsel for the petitioner to go back and include the 10 percent per annum interest on the shortage of the—

"Mr. Decker: What was that figure again?

"The Court: $13,395. And the 10 percent interest has to apply. We cannot waive that.

"As and for attorney fees, the court finds that father has paid his attorney $2,500; mother paid her attorney $2640. I'm going to find, based on the incomes of the parties, pursuant to Family Code section 2030, 2032, et seq, that father shall pay as a contributory share of attorney fees to counsel for mother: $1,150.

"That can be made at the rate of $250 per month commencing September the 1st, continuing on the 1st of each month thereafter until paid in full. If any two payments are more than five days late, whether consecutive or not, the whole amount shall be immediately due and payable and shall bear interest at the rate of 10 percent."

At that point Richard's counsel interrupted to argue that there had been no preliminary finding of change of circumstances. The trial judge replied that "the child no longer lives with her" was the change in circumstances justifying modification of the spousal support order. When Richard's counsel asserted that the change was "over two years ago," the trial judge acknowledged the passage of time, then changed the subject.[5]

As to any efforts on Laurie's part to become self-supporting, the trial judge said that the $2,580 a month Laurie was then making constituted a "substantial increase" over what had been imputed to Laurie by way of income capacity in the 2001 judgment ($1,000). As far as the trial judge was concerned, the $2,580 itself represented a "sufficient effort" to become self-supporting. Earlier in the argument, however, the trial judge said, in answer to Richard's counsel's argument that there was no evidence Laurie had done anything "to improve or become self-supporting," that Laurie "doesn't have any education."[6]

---

[5] After announcing that the award would be $1,625 a month and making an attorney fee award (not at issue in this appeal), this exchange followed:

"Ms. Brandon [Richard's attorney]: Your honor, did you make a preliminary finding with regard to the change of circumstances that petitioner had to demonstrate in order to obtain spousal support

"The Court: The change of circumstances is that the child no longer lives with her.

"Ms. Brandon: That was over two years ago, your honor.

"The Court: I understand. I understand. But we also have to worry about the Q.D.R.O.'s [Quailfied Domestic Relations Order]. I'm going to order that she has to pay half the cost of the preparation of the Q.D.R.O.'s. Each party is to pay one half the costs for the preparation of the Q.D.R.O.'s and that needs to be done.

"Ms. Brandon: But, your honor, the judgment provides she was to pay 100 percent of the cost of the Q.D.R.O.'s. That is in the judgment.

"The Court: I know that. I'm looking at the—she earns $2500 a month and he earns $13,000 a month. There is a substantial—he earns 83 percent of the total combined incomes of the parties if the parties were to look at the total amount available to them."

No further colloquy on the change of circumstances appears in the reporter's transcript.

[6] Here is the relevant portion of transcript, picking up at the point where footnote 4 above left off:

"Ms. Brandon: Your honor, there is no evidence that she has tried to improve or become self-supporting in the seven years the support has been paid.

"The Court: She doesn't have any education.

"Ms. Brandon: Yes, she does.

"The Court: She is making $15 an hour, which is $2580 more—$2580 a month, which is more than double of what she was making. When they imputed $1,000 to her, she wasn't making anything.

"Ms. Brandon: But she had done nothing to evidence that she searched for any job besides that one, which was given to her two years ago by a friend.

"The Court: Well, she is making $15 an hour, $2,580 a month, which is two-and-a-half times what was imputed to her at the time of the judgment. The court finds that is a substantial increase of what was imputed to her, and that at this point in time the change of circumstances that she has made efforts to improve is a sufficient effort."

The $1,625 modified spousal support order, made retroactive to February 15, 2008, was embodied in a formal order filed October 9, 2008, from which Richard took a timely appeal on November 26, 2008.[7]

## II. *Section 4326*

### A. The History

In *In re Marriage of Lautsbaugh* (1999) 72 Cal.App.4th 1131, 1133 [85 Cal.Rptr.2d 688], the Court of Appeal held that the circumstance of a child's graduation from high school and "concomitant termination of husband's child support obligations" was *not* a sufficient "material change of circumstances" to justify a spousal support modification request. The court based its thinking on the rule that "Circumstances accounted for in the previous order cannot constitute a change of circumstances." (*Ibid.*, citing Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 1999) ¶ 17:147, p. 17-33.) Since the "termination of child support was within the expectations of the original order," the termination was simply not a change of circumstances. (*Lautsbaugh, supra*, 72 Cal.App.4th at p. 1133.)

In 2007, the Legislature added section 4326 (Stats. 2007, ch. 247, § 1) to the Family Code, with the express purpose of overturning the *Lautsbaugh* decision. The bill was Senate Bill No. 415 (2007–2008 Reg. Sess.), carried by an Orange County state Senator (Tom Harman) and was presented as a "non-controversial bill, sponsored by the Family Law Section of the State Bar," that "seeks to eliminate this so-called 'change of circumstances' courthouse hurdle in these cases when a child support order terminates by operation of law." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 415 (2007–2008 Reg. Sess.) p. 1, as amended June 18, 2007.) The reports from the Assembly Judiciary Committee, the Senate Judiciary Committee and the Senate Rules Committee are all easily accessible online, and in any event are summarized in a comment in a Rutter Group Practice Guide. (See Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2008) ¶ 17:150.4a, p. 17-35.) The committee reports and the Rutter comment all tell this consistent story about the intent of the bill:

Assume a hypothetical appropriate amount of spousal support in a case that also involves a child support order. Further assume, however, that because of the high levels of child support required under California child support guidelines, there simply isn't enough money left over for the spousal support

---

[7] Laurie did not file a respondent's brief. We decide this appeal based on the record, the opening brief and any oral argument by either party. (See *In re Marriage of Laurenti* (2007) 154 Cal.App.4th 395, 403, fn. 5 [64 Cal.Rptr.3d 449].)

order to reach that hypothetically appropriate amount. Under *Lautsbaugh*, when the child support order terminates, the supported spouse would be left with a subappropriate spousal support order, but no chance to go back to court and (as the Senate Rules Committee report put it) "make a case for a modified spousal support order based upon a change of circumstances." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill. No. 415 (2007–2008 Reg. Sess.) Mar. 29, 2007, pp. 2–3.) The bill was intended to remedy that situation.[8]

The Senate Rules Committee report noted that courts do "not always consider the termination of a child support obligation in setting the terms of a spousal support order" and parties in propria persona "may not have the foresight or legal knowledge to request that a court consider the termination of a child support obligation when setting the terms of spousal support." The report gives the example of a supported spouse whose "children may have already graduated from high school, but continue to reside in the home rent-free." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill. No. 415, *supra*, p. 4.) Under such a circumstance, modification of spousal support may be appropriate, but, under the rule of *Lautsbaugh*, there would be "no recourse" in such a situation. (*Ibid.*)

An interesting aspect of the legislation is that, in July 2007, the author "agreed to accept an amendment . . . adding a three-year sunset to the measure to permit the Legislature to review the effect of this law change to ensure no unintended results come about through this reform." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 415, *supra*, p. 2.) Hence, unless extended, section 4326 will expire on January 1, 2011.

### B. The Language

The operative words of section 4326 can be readily quoted in their entirety: "In a proceeding in which a spousal support order exists or in which the court

---

[8] Here is the rationale for the bill straight from the Senate Rules Committee third reading analysis of March 29, 2007: "Need for the bill. According to the author's office, because of the increased amounts of child support mandated by Family Code 4055, the supporting spouse frequently has insufficient remaining income to pay the supported spouse what would otherwise be an appropriate amount of spousal support, a circumstance reflected in the spousal support order. Thus, spousal support orders typically do not reflect the supported spouse's need or the supporting spouse's ability to pay, both measured independently from the children, but is an equitable division of the income remaining after the amount of child support is set. Thus, the sponsor asserts, the supported spouse should be permitted to return to court when a child support order terminates by operation of law, and make the case for a modified spousal support order based upon a change of circumstances. This permits the supported spouse's change of circumstances to be reevaluated in the same light as a similarly situated spouse with no children." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill. No. 415, *supra*, pp. 2–3, underscoring omitted.)

has retained jurisdiction over a spousal support order, if a companion child support order is in effect, the termination of child support pursuant to subdivision (a) of Section 3901 constitutes a change of circumstances that may be the basis for a request for modification of spousal support."

As we have alluded to already, the linguistic structure of section 4326 is conditional, as shown by that big word "if." There are two conditions: (1) A "proceeding" in which a spousal support order exists or the court has retained jurisdiction, and (2) "a companion child support order is in effect." *If* the conditions are met, *then* "the termination of child support pursuant to subdivision (a) of Section 3901 constitutes a change of circumstances that may be the basis for a request for modification of spousal support." (§ 4326, subd. (a).) We note that section 3901, by its terms, speaks of child support continuing *until* certain events, most notably a child reaching, depending on the circumstances, the age of 18 or 19.[9]

We confront the second condition of section 4326: What did the Legislature mean—or intend[10]—when it wrote the words, "a companion child support order is in effect"?

The committee reports fail to directly address the issue. Nor do the facts in *Lautsbaugh* provide a great deal of help. In *Lautsbaugh*, the youngest child graduated from high school in "June 1997," and the supported spouse filed her OSC to increase spousal support on June 3, 1997. (*Lautsbaugh, supra,* 72 Cal.App.4th at p. 1133.) Assuming that the child support payments were due at the very end of one month or, more likely, the very beginning of the next, a child support order was certainly "in effect" on June 3 when the OSC was filed. (Also: Do any high schools who hold graduation ceremonies in June hold them as early as June 3? Probably not.) That is, if some time had elapsed from the "termination" of the child support order at graduation until

---

[9] Here is the complete text of section 3901:

"(a) The duty of support imposed by Section 3900 continues as to an unmarried child who has attained the age of 18 years, is a full-time high school student, and who is not self-supporting, until the time the child completes the 12th grade or attains the age of 19 years, whichever occurs first.

"(b) Nothing in this section limits a parent's ability to agree to provide additional support or the court's power to inquire whether an agreement to provide additional support has been made."

[10] Along with the court in *Leslie Salt Co. v. San Francisco Bay Conservation etc. Com.* (1984) 153 Cal.App.3d 605, 614 [200 Cal.Rptr. 575], we may sidestep, at least for purposes of this case, the great debate between text versus intent-behind-the-text that will probably never be completely settled. (Cf. *ibid.* ["The meaning of the words of a statute or, to use the alternative approach favored by many courts, 'the intent of the Legislature . . . .'"]; *id.* at p. 614, fn. 11 [quoting Oliver Wendell Holmes, " 'we do not inquire what the legislature meant; we ask only what the statute means' "].)

the supported spouse brought her OSC, we would have a pretty good clue that the Legislature meant something broader by "in effect" than, er, "in effect."

That is, the Legislature's intent to overturn *Lautsbaugh* as it relates to child support termination does not tell us that it meant to allow modifications filed *after* the termination of the child support order. All we know for sure is that a modification filed before the termination of the child support order, as in *Lautsbaugh*, is within the meaning of the phrase "is in effect."

### C. One Extreme . . .

There is another statute, however, which directly addresses when a child support order is "in effect," section 3601. The operative language is in the first sentence: "(a) An order for child support entered pursuant to this chapter *continues in effect until* the order (1) is terminated by the court or (2) *terminates by operation of law pursuant to* Sections 3900, *3901*, 4007, and 4013." (Italics added.)

When statutes are in pari materia, similar phrases appearing in each should be given like meanings. (*People v. Lamas* (2007) 42 Cal.4th 516, 525 [67 Cal.Rptr.3d 179, 169 P.3d 102].) Statutes are in pari materia when they are " ' "on the same subject" ' " (*People v. Honig* (1996) 48 Cal.App.4th 289, 327 [55 Cal.Rptr.2d 555]), or " ' " 'dealing with the same subject matter[' "] ' " (*Bonner v. County of San Diego* (2006) 139 Cal.App.4th 1336, 1351 [44 Cal.Rptr.3d 116]). Section 3601 is certainly in pari materia with section 4326, because not only do section 4326 and section 3601 each deal with the topic of child support orders, but each involves the question of when a child support order is "in effect." Section 3601, in fact, directly answers the question: A child support order is "in effect until the order (1) is terminated by the court or (2) terminates by operation of law pursuant to Sections 3900, 3901, 4007, and 4013," that is, *until* the child reaches the age of majority and support is terminated under section 3901.[11] (See also *Medical Board v. Superior Court* (2001) 88 Cal.App.4th 1001, 1016 [106 Cal.Rptr.2d 381] [rule of pari materia "applies even when, as here, one statute deals generally with the subject and another deals with the subject with more specificity"].)

---

[11] Here is the complete text of section 3601:

"(a) An order for child support entered pursuant to this chapter continues in effect until the order (1) is terminated by the court or (2) terminates by operation of law pursuant to Sections 3900, 3901, 4007, and 4013.

"(b) Subject to Section 3602, subdivision (a) applies notwithstanding any other provision of law and notwithstanding that the proceeding has not been brought to trial within the time limits specified in Chapter 1.5 (commencing with Section 583.110) of Title 8 of Part 2 of the Code of Civil Procedure."

But there's a problem with a construction of section 4326 that simply imports the literal language of 3601 into section 4326. The problem is the word "termination," as in the phrase, "the termination of child support pursuant to subdivision (a) of Section 3901 constitutes a change of circumstances . . . ." Construing the conditional words "is in effect" to exclude any time at all *after* the formal "termination" of the child support order reads the words "the termination" to mean, in practicality, "the upcoming termination" or "the prospective termination."

To be sure, the two readings can be literally harmonized by treating the words "the termination" as a fixed point in time and space, regardless of whether one is looking forward toward an upcoming termination, or backward toward one that has already happened. Thus harmonized, one would read section 4326 to apply only to modification requests made prior to the termination of support, that is, while the "companion child support order" was still "in effect."

Even so, such a reading seems at odds with the basic purpose of the statute. The basic purpose of the statute is to allow supported spouses no longer receiving child support to "make the case" for a modification of spousal support *because* of the termination of child support. Basically, a reading that precluded all modifications filed after formal termination would deprive trial judges of the data they would need to make an informed decision concerning the modification request.

■   This court recently recounted the basic rules of spousal support modification in *In re Marriage of Dietz* (2009) 176 Cal.App.4th 387, 396 [97 Cal.Rptr.3d 616], alluding to the numerous factors involved: " 'Modification of spousal support, even if the prior amount is established by agreement, requires a material change of circumstances since the last order. . . . Change of circumstances means a reduction or increase in the supporting spouse's ability to pay and/or an increase or decrease in the supported spouse's needs. . . . It includes all factors affecting need and the ability to pay.' . . . 'A trial court considering whether to modify a spousal support order considers the same criteria set forth in Family Code section 4320 as it considered in making the initial order.' " (Citations omitted.)

In other words, in considering a spousal support modification request—to be sure, given the predicate of a change of circumstances—the trial court looks at the various factors bearing on spousal support under section 4320. However, under a reading of section 4326 which requires a spousal support modification request to be made prior to the "termination" of the child support order, the supported spouse would have to make a request for modification prior to any actual experience of trying to live on the existing

spousal support order absent child support. Data concerning several important factors bearing on the modification under section 4320 would be literally unavailable.

There would, for example, be no "data" concerning the supported spouse's expenses—and maybe the supported spouse's income as well, depending (to use the example from the committee report) on whether a child still living at home paid rent or not, or could get a job with which to pay rent. There would be no data about the needs of the supported spouse after (as in this case) the youngest child had moved out (cf. § 4320, subd. (d)), or, by contrast, the ability of the supported spouse, now (possibly) free from childcare responsibilities, to earn income (§ 4320, subd. (a)(1), (2)) or obtain retraining to earn extra income because of the prospect of more free time because of a newly empty nest (§ 4320, subd. (*l*)). And there would be no data with which to otherwise gauge the balance of hardships to each of the parties (§ 4320, subd. (k)) in a context where a parent, formerly a primary caregiver for a child, no longer (maybe, maybe not) had that role. That is, under a reading that required the modification request be brought prior to the actual termination of the child support order, a great deal of information that a trial judge would necessarily want in order to make an appropriate modified spousal support order would simply not yet exist.

Moreover, there is the example given by the Senate Rules Committee: children who have "already graduated from high school, but continue to reside in the home rent-free." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill. No. 415, *supra*, p. 4.) A reading of "is in effect" that precluded spousal support modifications after termination of the child support order would mean that some such situations where the child had graduated from high school but was continuing to reside in the home rent free would, literally, not qualify for modification even though the Legislature explicitly intended them to qualify. (E.g., the parent initially thought, before graduation, that the child would pay rent because he or she had a job lined up, so didn't bring an OSC for spousal support modification, and then, a week after graduation the child lost the job.)

We therefore decline to construe the words "is in effect" in pari materia with section 3601 such that section 4326 would automatically not apply the day after a child reached his or her majority. Given the purpose of the statute, it seems that the Legislature wanted to treat the termination as *the* change of circumstances warranting modification. It would defeat the purpose of section 4326 to require the modification be filed before the actual change even though the literal language of section 3601 would point in that direction, and we decline to do that. (See *Rehman v. Department of Motor Vehicles* (2009) 178 Cal.App.4th 581 [100 Cal.Rptr.3d 510] [construing two provisions of

Veh. Code so as to provide for immediate suspension of a commercial truck driver's license for driving with 0.04 percent or greater blood-alcohol level even though one statute seemed to require reinstatement of license if level was not 0.08 percent or greater].)

### D. . . . And the Other

But if a supported spouse is not required to file a modification request prior to the day the child support order expires, the question remains how long after expiration may such a request be filed? Indefinitely?

We have already rejected a reading of "is in effect" that automatically precludes a modification request made after the expiration of the child support order. The opposite extreme would be a reading that would allow a modification any time there had been a child support order, no matter how much time had passed since it was in effect.

█ Courts should "give effect and significance to every word and phrase of a statute." (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476 [66 Cal.Rptr.2d 319, 940 P.2d 906].) The words "is in effect" have to have some meaning in section 4326. Indeed: "Even when broadly construing a statute, we may not 'ignore the plain statutory language' or reach conclusions inconsistent with this language." (*S. B. Beach Properties v. Berti* (2006) 39 Cal.4th 374, 382 [46 Cal.Rptr.3d 380, 138 P.3d 713].)

A reading of section 4326 that would allow an unlimited amount of time to bring a spousal support modification request after a child support order literally went *out* "of effect" (under § 3601) would read the words "is in effect" totally out of the statute. If the Legislature had wanted a rule whereby any case in which there had ever been a child support order in effect *at any time* to be a change of circumstance that could possibly justify a modified spousal support order, it could easily have said so—indeed, all the Legislature needed to do was change one word: *is* to *was*, as in "was in effect." It did not. The Legislature said: ". . . is in effect," not "was in effect" or "has been in effect at any time."

█ Back to the purpose of the statute: The idea was that a spousal support order (typically in a long-term marriage) might be subpar because a child support order essentially left insufficient money for a par spousal support order. Hence the termination of the child support order would leave the supported spouse with the subpar order, and no ground to correct it. That suggests that the modification should be brought within a reasonable amount of time after the termination of the child support order, and—given what we

have said above about the section 4320 factors that would go into the modification calculus—allowing for enough time for some "posttermination" data to be collected.

A rule requiring a reasonable relationship between the event that the Legislature said could be a change of circumstance justifying a possible modification—the termination of the child support order—and the modification request both (a) satisfies the purpose of the statute while (b) respecting the Legislature's choice of words, "is in effect." For shorthand, we might call such a rule a requirement of reasonable contemporaneousness.

## E. When Is Becomes Was

That leaves the question of the actual facts in this case: The child support order terminated in August 2006. The modification request was made more than 17 months later in February 2008.

We are guided by what the Legislature has said about deadlines in other contexts, particularly contexts where the burdened party is necessarily aware of some need to act at the time of the event. A litigant has one year to move to set aside a family law judgment if procured by fraud or perjury (§ 2122, subds. (a), (b)), one year if a stipulated or uncontested judgment is the product of a mistake or if there was a failure to comply with disclosure requirements (§ 2122, subds. (e), (f)), but two years if the judgment was procured because of duress or mental incapacity (§ 2122, subds. (c), (d)). The classic deadline to move to set something aside because of mistake or related mishaps under Code of Civil Procedure section 473 is "a reasonable time, in no case exceeding six months." (Code Civ. Proc., § 473, subd. (b).)

In light of the Legislature's concern that a given spousal support award might be the product of the law's own (i.e., § 4055's) squeeze-out effect because of a high level of child support, it seems hard to justify a modification made after more time has expired than might have been the case of a family law judgment procured through mistake, fraud or perjury. After all, to the degree that a supported spouse entering into a stipulation, or a judge making a spousal support order, recognized that a given spousal support was subpar (lower than it otherwise would be absent the child support order), that information was known to the parties at the time of the original order. They would have *less* excuse than a litigant who had a suspicion that his or her spouse had gained an unfair advantage through a fraud or perjury to sit on their rights.[12]

---

[12] As for the two-year limit in cases of duress and mental incapacity, there is simply no analogy. Note that duress, in a family law context, often involves domestic violence, and it

■ In the present case, however, the time period was 17 months, and the OSC was filed on the very day the spousal support order was set to step down to zero. The supported spouse did not bring her OSC for modification in the *immediate wake* of the termination of the child support, but in view of the *impending reduction* of spousal support. So, the waiting period was too long. Seventeen months belies any temporal relationship between the modification request and the end of child support. Rather, the temporal relationship was clearly the scheduled step down of negotiated support to zero.

Nor can the trial judge's order be justified on any of the other three bases advanced in Laurie's supporting declaration. The step down to zero, with any attendant loss of income, *was* a circumstance "accounted for" in the 2001 judgment, and the Legislature did not "overrule" the "accounted for in the previous order" principle that animated *Lautsbaugh.* Rather, the Legislature simply said that, given the crowding out effect of child support orders, a spousal support order may not *truly* account for the future discontinuation of child support.

### III. *Memo to the Legislature*

Because of the unusual circumstance of construing a piece of legislation that has less than 18 months before it sunsets, we address the Legislature directly:

Section 4326 is scheduled to terminate on January 1, 2011. If you decide to renew it, please consider saying exactly what you mean by "is in effect." One easy solution: Specify a timeframe around the termination date of child support: say, plus or minus six months, when a spousal support modification request based on the termination of child support may be filed. (Cf. Code Civ. Proc., § 473.)

### IV. *Disposition*

The order modifying support is reversed, with directions to the trial court to enter a new order denying the request for modification. Our decision today is without prejudice to Laurie to bring an OSC for modification of spousal support based on any changed circumstance other than the termination of child support in 2006 or the step down that was accounted for by the parties back in 2001.

---

may take a victim of domestic violence a certain recovery time before the victim can fully appreciate that a given judgment was the product of domestic violence (even just threatened). So the Legislature would have been perfectly logical to build in considerable leniency as to time in such cases.

In light of the disparities of income and the fact that an attorney fee order was made in Laurie's behalf at the trial level, each side will bear its own costs on appeal.

Rylaarsdam, J., and Moore, J., concurred.