Filed 2/6/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| CITY OF PALMDALE et al., | B243802 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC443280) |
| v. | |
| CITY OF LANCASTER et al., | |
| Defendants and Respondents. | |
| GENERAL MOTORS et al., | |
| Real Parties in Interest. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Rita Miller, Judge.  Affirmed.

Kane, Ballmer & Berkman, Murray O. Kane and Guillermo A. Frias, for Plaintiff and Appellant.

Stradling Yocca Carlson & Rauth, David R. McEwen, Allison E. Burns and David C. Palmer for Defendants and Respondents.

Callahan, Thompson, Sherman & Caudill, Robert W. Thompson and Bryan S. Owens, for Real Parties in Interest Antelope Valley Chevrolet, Inc., 7 Jays LLC, and Juan Lou Gonzales.

_____

The City of Palmdale appeals from the trial court's judgment that prohibited the City of Lancaster from offering financial assistance to auto dealer Juan Lou Gonzales and his dealership for only two years and denying disgorgement by the City of Lancaster of related sales taxes. We affirm.

## FACTS AND PROCEEDINGS

Juan Lou Gonzales owned Saturn of Antelope Valley, a General Motors (GM) auto dealership in the Palmdale auto mall. As part of GM's reorganization in bankruptcy during the Great Recession, it stopped making Saturn cars. Consequently, Gonzales sought a Chevrolet franchise from GM. GM agreed to award a Chevrolet franchise to Gonzales under certain conditions, which included that he find an automobile sales lot satisfying GM's criteria for Chevrolet dealerships and that he be ready to open his new dealership on a "short deadline."

As the trial court later found, Gonzales tried in good faith to lease or buy from appellant City of Palmdale a lot in the Palmdale auto mall suitable for his hoped-for Chevrolet dealership. But the trial court found, "Palmdale flatly refused to lease or sell [a lot] to him and otherwise made it impractical for Mr. Gonzales to locate his Chevrolet dealership in the Palmdale auto mall. Palmdale's apparent reason was that Palmdale preferred to have another dealer, Mr. Maile (who had a history of having a dealership in the Palmdale auto mall,) run any Chevrolet dealership that was to be operated in the Palmdale auto mall."

While Gonzales was unsuccessfully trying to strike a deal with Palmdale, he entered into negotiations with respondent City of Lancaster to obtain a lot in the Lancaster auto mall, which was the only other location in the area that satisfied GM's requirements. As negotiations with Lancaster were underway, the Lancaster City

Council in August 2010 authorized $604,000 in financial assistance to Gonzalez to help him move his car dealership business to Lancaster.[1]

Government Code section 53084, subdivision (a) mandates that a city such as Lancaster "shall not provide any form of financial assistance to a vehicle dealer . . . that is relocating from the territorial jurisdiction of one local agency to the territorial jurisdiction of another local agency . . . within the same market area." Health and Safety Code section 33426.7 imposes the same prohibition on redevelopment agencies such as now-defunct respondent Lancaster Redevelopment Agency.[2] The parties refer to these two statutes together as "SB 114." The parties also agree that Palmdale and Lancaster are in "the same market area" under the two statutes.

On August 11, 2010, within days of Lancaster's authorization of financial assistance to Gonzales for his proposed Chevrolet dealership, Palmdale filed a complaint. The complaint named respondents City of Lancaster, its city council, and its redevelopment agency as defendants, and named as real parties in interest Gonzales and the entities through which he operated his dealerships: 7 Jays, LLC (Saturn dealership in Palmdale) and Antelope Valley Chevrolet, Inc. (Chevrolet dealership in Lancaster). The complaint alleged causes of action for violation of Government Code section 53084, subdivision (a) and Health and Safety Code section 33426.7, subdivision (a) based on Lancaster's offer of $604,000 in financial assistance to entice Gonzales to move his car dealership from Palmdale to Lancaster. The complaint sought a declaratory judgment that the actions of Lancaster's city council relating to financial assistance to Gonzales were void. The complaint also sought writ relief directing Lancaster to set aside its

---

[1]    The City Council also authorized Lancaster to buy parking lots inside the Lancaster Auto Mall near Gonzales's anticipated Chevrolet dealership from defendants who are not parties to this appeal, but those parking lots are not at issue here.

[2]    California abolished redevelopment agencies effective February 1, 2012. (*California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 241-242, 275; Health & Saf. Code, § 34170.)

3

resolutions and agreements offering the financial assistance.[3] The trial court issued a preliminary injunction on September 24, 2010. The injunction barred Lancaster from providing any financial assistance to Gonzales to relocate his auto dealership during the pendency of Palmdale's lawsuit.

While the lawsuit was pending and the injunction in place, Gonzales concluded Palmdale "had firmly and finally rejected his efforts to start the Chevrolet dealership in Palmdale." Believing he had to act immediately to meet GM's deadline for opening the Chevrolet dealership, Gonzales completed negotiations with Lancaster for a lot in the Lancaster Auto Mall without any apparent financial assistance. Gonzales closed his Saturn dealership in Palmdale on October 31, 2010, and opened his Chevrolet dealership in Lancaster on November 9, 2010.

A bench trial on Palmdale's complaint followed. Entering judgment for Palmdale in July 2012, the court found Lancaster and its redevelopment agency had violated Government Code section 53084 and Health and Safety Code section 33426.7 "when they agreed to provide financial assistance in the amount of $604,000 to a vehicle dealer, [Gonzales] relocating from Palmdale to Lancaster." The court declared void all agreements and resolutions by Lancaster that provided financial assistance to Gonzales and his Chevrolet dealership. Additionally, the court enjoined Lancaster from providing any financial assistance to Gonzales and his Chevrolet dealership for the two years immediately following the November 9, 2010 opening of the Chevrolet dealership. Palmdale – the trial's nominal winner – filed a timely notice of appeal in September 2012.

On November 13, 2012, four days after expiration of the injunction's two-year ban on Lancaster financially assisting Gonzales and his Chevrolet dealership, Lancaster paid

---

[3]     The complaint also alleged violations of the Brown Act dealing with open public meetings, but the trial court found no such violations and the court's finding is not at issue in this appeal.

4

$300,000 to Gonzales for his dealership's recorded covenant to operate for a minimum of ten years an auto dealership only in the Lancaster Auto Mall.

## DISCUSSION

1.  *Prohibiting Financial Assistance for Only Two Years*

Government Code section 53084, subdivision (a) states that "a local agency shall not provide any form of financial assistance to a vehicle dealer . . . that is relocating from the territorial jurisdiction of one local agency to the territorial jurisdiction of another local agency . . . within the same market area." Based on that statute, the trial court permanently enjoined Lancaster's payment of $604,000 to Gonzales that Lancaster had approved in August 2010 while he was negotiating with Lancaster about opening his new Chevrolet dealership in Lancaster. The court's judgment stated: "The court declares and finds as follows: [¶] The City of Lancaster and Lancaster Redevelopment Agency violated Government Code section 53804 and Health and Safety Code section 33426.7 respectively when they agreed to provide financial assistance in the amount of $604,000 to a vehicle dealer [Gonzales] relocating from Palmdale to Lancaster." Neither Palmdale nor Lancaster challenges on appeal that part of the court's judgment. Palmdale contends, however, that the court erred in limiting to only two years the ban on Lancaster offering financial assistance to Gonzales and his Chevrolet dealership. The time limit in the court's judgment states: "The City of Lancaster and the Lancaster Redevelopment Agency are enjoined for a period of two years from the date of the vehicle dealer's relocation (November 9, 2010) from providing any financial assistance to" Gonzales's Chevrolet dealership.

Palmdale contends Government Code section 53804 and Health & Safety Code section 33426.7 permit no time limit on the prohibition of financial assistance to a relocated auto dealership. (For convenience we will focus on Government Code section 53804, but our analysis applies to both statutes because their only pertinent difference is the Government Code statute applies to "local agencies" such as cities,

5

while the Health and Safety Code provision applies to redevelopment agencies.)[4] Palmdale argues, "The prohibition against providing any form of financial assistance to a relocating dealer . . . is not limited by time or conditioned in any manner. There is simply no two year limitation." In support of its contentions, Palmdale asserts the statute "clearly states that 'a local agency shall not provide any form of financial assistance to a vehicle dealer.' " But Palmdale's quotation on which it builds its appeal is incomplete. Quoted more fully, the statute prohibits assistance to an auto dealer that "is relocating" as follows: "a local agency shall not provide any form of financial assistance to a vehicle dealer . . . that *is relocating* from the territorial jurisdiction of one local agency to the territorial jurisdiction of another local agency . . . ." (§ 53084, subd. (a), italics added.)[5] The appeal thus turns on the meaning of "is relocating."

The phrase "is relocating" implies a contemporaneous element, suggesting a city must not offer financial assistance to an auto dealer while the dealer is relocating to the city. (See *In re Marriage of Kacik* (2009) 179 Cal.App.4th 410, 413 (*Kacik*) [word "is" in the phrase "is in effect" construed to require "reasonable contemporaneousness" in order to implement the statute's purpose].) The statute's legislative history documents that the Legislature's concern about cities poaching auto dealerships from each other spawned the statute. The legislative history shows that the Legislature intended to prohibit a city from offering financial assistance that tried to lure an auto dealership from a neighboring city in a race for sales tax revenue, a race that auto dealerships could run to their advantage to the detriment of competing cities and city coffers. By enacting the statute, the "Legislature targeted a problem of 'statewide concern,' namely, the predatory competition among municipalities for sales tax revenue and the resulting squandering of

---

[4]     All future undesignated statutory references are to the Government Code.

[5]     The statute defines "relocating" as meaning "the closing of a vehicle dealer . . . in one location and the opening of a vehicle dealer . . . in another location within a 365-day period . . . ." (§ 53084, subd. (b)(5).) The parties agree that the Saturn dealership closed and the Chevrolet dealership opened within the statutory 365-day period.

6

public money spent to lure large revenue-producing stores away from neighboring municipalities." (See *City of Carson v. City of La Mirada* (2004) 125 Cal.App.4th 532, 544.) The statute's uncodified statement of Legislative findings announced that the "Legislature finds and declares that the provision of financial assistance by local agencies to automobile dealerships . . . that seek to obtain public funds from local agencies as subsidies for their relocation, results in the loss of public funds available for public purposes, impedes the implementation of good planning, encourages unfair competition between local agencies, and does not result in a public benefit to the people of the state." (See Historical and Statutory Notes, 36A West's Ann. Ed. (2011 supp.) foll. § 53084, p. 24.) Such competition among cities does not, the Legislature found, increase overall economic activity, but merely shuffles it from one city to another. As one proponent of the statute explained during legislative hearings, "subsidizing the relocation of stores within the same market area . . . is hollow economic development." (See Com. of Sen. Local Gov. Com., Relocation Incentive, Rep. on Sen. Bill No. 114 (2003-2004 Reg. Sess.) July 18, 2003, pg. 2.)

Here, Gonzalez is correctly understood to have been relocating his auto dealership when he moved to Lancaster.[6] The question before us is the statute's application to a dealership that has completed relocating. When does "is relocating" become "was relocating"? (*Kacik, supra,* 179 Cal.App.4th at p. 413 ["How much time can elapse before *is* becomes *was*?"].) Palmdale proposes a timeless, never-ending prohibition of financial assistance to an auto dealership that has at any time relocated in its past. According to Palmdale, placing a time limit on the prohibition nullifies the statute's deterrent effect because the time limit can be waited out, which, Palmdale, asserts happened here. According to Palmdale, Lancaster's $300,000 payment to Gonzales for his covenant to operate only an auto dealership in the Lancaster Auto Mall was a thinly-

---

[6] Although Gonzales's dealerships sold different types of cars, the parties do not dispute the trial court's ruling that the difference did not matter under the statute because Gonzales had an ownership interest in both dealerships.

7

disguised payoff for relocating to Lancaster because the covenant was illusory in that Gonzales's business experience made it unlikely, and the Lancaster Auto Mall's lease and CC&Rs governing the auto mall made it impossible, for Gonzales to operate anything but an auto dealership on his lot.[7]

We must interpret the statute to achieve its purpose. "It is a well-established legal principle that the purpose of a statute is a guiding star in defining the language it employs: 'the objective sought to be achieved by a statute as well as the evil to be prevented is of prime consideration in its interpretation'." (*Sierra Club v. Hayward* (1981) 28 Cal.3d 840, 861, fn. 12 quoting *People v. Asamoto* (1955) 131 Cal.App.2d 22, 29; *People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 306 [same]; *Mt. Hawley Insurance Company v. Lopez* (2013) 215 Cal.App.4th 1385, 1416 [same].) Palmdale's interpretation of a never-ending ban on all financial assistance is unnecessary to achieve the Legislature's purpose of stopping a city from luring an auto dealer from a neighboring city. If a city's financial assistance does not induce relocation, then the statute's purpose is served. We acknowledge, as does Lancaster, that concerns about subterfuge exist, arising from a city's silent or side agreement to provide future financial assistance while trying to conceal a connection between the assistance and relocation. But subterfuge under such circumstances would be a factual matter which trial courts are competent to ferret out. Indeed, Lancaster agrees that a court may prohibit such subterfuges. Lancaster states: "If a local agency enters into an agreement for deferred

---

[7]     We note, but without addressing because the parties did not raise the point, that a question exists whether the covenant was "financial assistance." The statute contains a non-exhaustive list of four types of financial assistance, none of which seem to apply to the covenant. The statute states, " 'Financial assistance' includes, but is not limited to, any of the following: [¶] (A) Any appropriation of public funds, including loans, grants, or subsidies or the payment for or construction of parking improvements. [¶] (B) Any tax incentive, including tax exemptions, rebates, reductions, or moratoria of a tax, including any rebate or payment based upon the amount of sales tax generated from the vehicle dealer or big box retailer. [¶] (C) The sale or lease of real property at a cost that is less than fair market value. [¶] (D) Payment for, forgiveness of, or reduction of fees." (§ 53084, subd. (b)(3).)

8

financial assistance so as to avoid [the prohibition], it is clearly in violation of [the statute] as it is providing financial assistance to a 'relocating' vehicle dealership.  Courts would simply deal with such a transaction as a substance over form transaction and impose injunctions on the financial assistance that violated" the statute.

That the Legislature had in mind some sort of limit on how long a ban on financial assistance might apply is reinforced by the statute's requirement that the opening and closing of a dealership occur within 365 days.  If a dealer shuts down for one year and one day, the ban does not apply.  (§ 53084, subd. (b)(5) [" 'Relocating' means the closing of a vehicle dealer or big box retailer in one location and the opening of a vehicle dealer or big box retailer in another location within a 365-day period."].)  Moreover, banning all future financial assistance could have unintended consequences which the Legislature likely does not desire; for example, a city's economic revitalization plans or urban development proposals could suffer if a city could not offer financial assistance to a relocated dealership no matter how long it had done business in the city.  If the Legislature had intended such a far reaching result so far into the future, in all likelihood the Legislature would have said so.  And finally, a never-ending prohibition is inconsistent with the types of financial assistance the statute prohibits, which the statute's proponents envisioned as bearing a causal link between the assistance and relocation. (See Com. of Sen. Local Gov. Com., Relocation Incentive, Rep. on Sen. Bill No. 114 (2003-2004 Reg. Sess.) Feb. 3, 2003, pg. 2. ["Current law lists *four types of subsidies* which SB 114 would ban *if they resulted* in relocating businesses in the same market area."].)

For the foregoing reasons, we hold the trial court did not misinterpret Government Code section 53804 and Health & Safety Code section 33426.7 when it limited the ban on financial assistance to two years.

2. *No Order of Disgorgement*

Palmdale moved the court for an order compelling Lancaster to disgorge to Palmdale the sales taxes that Lancaster collected from Gonzales's Chevrolet dealership.

9

The court refused to order disgorgement. We review the court's refusal for abuse of discretion. (*Husain v. McDonald's Corp.* (2012) 205 Cal.App.4th 860, 867.) A court does not abuse its discretion if its exercise of discretion does not create a miscarriage of justice. (*Denham v. Superior Court of Los Angeles County* (1970) 2 Cal.3d 557, 566.)

In denying disgorgement, the court noted that Palmdale's complaint had not prayed for damages. Thus, Lancaster was not on notice that Palmdale might seek monetary relief. Moreover, the court found that the equities did not support awarding Palmdale damages. The court found that Gonzales moved to Lancaster because Palmdale would not sell or lease land to Gonzales for his Chevrolet dealership, making Palmdale's loss of future sales taxes a self-inflicted wound.[8] The court concluded that Palmdale delayed giving Gonzales the land he needed because Palmdale hoped it could help arrange for its preferred auto dealer (a Mr. Maile) to receive the new Chevrolet franchise. Palmdale's delay forced Gonzales to turn to Lancaster to get a location that satisfied General Motors. Gonzales moved to the lot in Lancaster in November 2010 despite the court's September 2010 injunction barring Lancaster from providing the promised $604,000 in financial assistance, meaning the assistance was not the reason for Gonzales's move.[9] (Compare *Palo Alto-Menlo Park Yellow Cab Co. v. Santa Clara County Transit Dist.* (1976) 65 Cal.App.3d 121 ["The violation of a statute gives to any person within the statute's protection a right of action to recover damages caused by its violation."]; *County of Los Angeles v. Alhambra* (1980) 27 Cal.3d 184, 195 [same].)

Palmdale contends Gonzales's reason or reasons for relocating are irrelevant because causation is not necessary for disgorgement. According to Palmdale, even if Gonzales moved for no reason other than "because he simply wanted to move," what

---

[8]     Palmdale disputes the court's finding, but that creates a factual question for the trial court's resolution.

[9]     As additional reasons to deny disgorgement, the court also found Lancaster had not acted in conscious disregard of Palmdale's interests; Lancaster was not Palmdale's fiduciary; and, Lancaster's receipt of sales tax revenues did not involve funds in which Palmdale had an ownership interest. We do not rely on those additional reasons.

matters is whether the statute "was violated – whether Lancaster offered prohibited relocation assistance." But regardless of whether Palmdale contention is correct, disgorgement of *sales tax revenue* does not necessarily follow. The legal system's most obvious response to unlawful financial assistance to a relocating dealer is to prohibit the aid, or if the aid is received, to order its return. But Palmdale does not convincingly explain how disgorgement of sales tax revenue follows from a relocation that proceeded without financial assistance. The court's refusal to order disgorgement is an especially appropriate exercise of its discretion because the evil the ban on financial assistance to relocating auto dealers seeks to prohibit is dipping into public coffers to lure an auto dealer to one's city. The statute's purpose is to protect the public fisc from deals in which only auto dealers benefit and the public as a whole suffers. The court achieved that goal when it enjoined Lancaster from giving $604,000 in relocation assistance to Gonzales. That Gonzales moved despite receiving no assistance does not render Lancaster's receipt of sales tax revenue ill-gotten gains that it ought to disgorge to Palmdale. The trial court thus did not abuse its discretion in denying disgorgement.

## DISPOSITION

The judgment is affirmed. Respondents to recover their costs on appeal.


RUBIN, J.

WE CONCUR:


BIGELOW, P. J.


GRIMES, J.

11