[No. H035957. Sixth Dist. June 19, 2012.]

In re the Marriage of SAMEER KHERA and MADHU SAMEER.
SAMEER KHERA, Respondent, v.
MADHU SAMEER, Appellant.

**COUNSEL**

J. Hector Moreno; Tone & Tone and Francine R. Adkins Tone for Appellant.

Gregory R. Ellis for Respondent.

## OPINION

**ELIA, J.**—Madhu Sameer appeals from the denial of her postjudgment motion to modify the judgment's spousal support order, a hybrid stepdown, *Richmond*-type order (see *In re Marriage of Richmond* (1980) 105 Cal.App.3d 352 [164 Cal.Rptr. 381]), which provided for the spousal support obligation of her former husband, Sameer Khera, to terminate June 1, 2010, unless she made a good cause showing to extend spousal support.[1] Implicit in the parties' oral stipulation, and the judgment reflecting that agreement, was the expectation that, by June 1, 2010, Madhu would have completed her master's degree in social work (MSW) and be able to support herself. Since Madhu did not make any showing that her ability to be self-supporting was an unrealized expectation, the court did not abuse its discretion by denying her modification request.

I

### Procedural History

On October 10, 2003, Sameer filed a petition for dissolution of marriage. The parties reached a settlement agreement and, on May 18, 2007, placed it orally on the record before the court. The February 25, 2008 judgment on reserved issues reflected the parties' May 2007 agreement. It resolved issues of property division, child custody, child support, pending contempt proceedings, and spousal support.

As to spousal support, the judgment provided for monthly support of $2,650 commencing on June 1, 2007, which was annually stepped down through June 1, 2010. For the period of June 1, 2009, through May 31, 2010, respondent Sameer was required to pay appellant Madhu monthly spousal support of $1,650. The judgment provided that "[o]n June 1, 2010, spousal support will be reduced to zero, unless, before that date, [appellant Madhu] files a motion to have spousal support continued and shows good cause as to why the Court should order spousal support to be continued." The judgment stated with regard to childcare expenses: "[C]ommencing June 1, 2007, the Parties shall each pay one-half of all: (a) reasonable child care expenses incurred to permit a Party to work; (b) only through October 30, 2007, reasonable child care expenses incurred to permit [appellant Madhu] to obtain her MSW degree . . . ."

In February 2009, Madhu moved to set aside the judgment. Sameer filed opposition papers and a declaration in response to the motion. Each party filed a settlement conference statement and an income and expense declaration.

---

[1] For ease of reference and meaning no disrespect, we will refer to Madhu Sameer and Sameer Khera by their first names.

Madhu sought modification of the judgment's spousal support provisions by an order to show cause filed March 24, 2010. She requested the following relief: "Wife requests that the Court determine the Marital Standard of Living . . . and thereby set the appropriate level of support. Based on those findings, Wife requests that the Court order an upward modification of spousal support, which includes a Smith Ostler obligation. Wife requests the Court appoint an expert to assist in the determination of the same and request that Husband be ordered to advance the costs required, subject to reallocation. Further, she requests that Husband continue paying support beyond June 1, 2010 until that time that Wife can become self-supporting."

Madhu's supporting declaration stated that the parties had been married in January 1986 and Sameer had filed for marital dissolution on October 10, 2003, and they had three children. She indicated she had agreed to the parties' stipulation under duress applied by her attorney and Sameer had failed to make full financial disclosures. She asserted that the judgment's spousal support provisions were "grossly inequitable" and did not include an *Ostler & Smith* provision.[2] She stated that she was "living far below the standard" of her marriage and was "currently struggling to meet even [her] most basic of needs."

In her declaration, Madhu emphasized her husband's high earnings as an executive and his extensive cash assets. She stated that, according to his W-2 forms, Sameer earned $593,111.41 in 2006 and $545,435.66 in 2007. The attached W-2 forms showed he earned $417,160.47 in 2008. The attached income and expense declaration dated September 30, 2009, indicated that his last month's salary or wages were $18,610 and he had also received an "annual-stock 46,020, bonus 120,110," which suggests he may have been earning less in 2009 than he had in 2006 to 2008.

---

[2] In *In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33 [272 Cal.Rptr. 560], the trial court ordered, in addition to fixed spousal support, additional spousal support in "a sum equal to 15 percent of his annual gross cash bonus when received" in conjunction with an automatic stepdown that reduced "all spousal support, both fixed and bonus percentage" to $1 per year in three years . . . unless prior to that time, [the wife] files a motion and shows good cause why the support order should be modified by demonstrating that she has made her best efforts to become self-supporting." (*Id.* at p. 42.) The reviewing court upheld the percentage award of future bonuses as spousal support, stating: "We interpret [Civil Code former] section 4801, . . . subdivision (a)(1)(C) . . . [(now Fam. Code, § 4320, subd. (b))], as mandating that the unpaid homemaker who is the prime caretaker for the children of the marriage be given the same consideration for such substantial contributions to the spouse whose career has been fostered during the marriage. The trial court complied with the legislative mandate to consider the extent to which [the supported spouse] contributed to [the supporting spouse's] career by awarding her a percentage share of his extra earnings for a period of time." (*Id.* at p. 49.)

As to her income, Madhu stated in her declaration that she was earning $9.00 per hour as an associate social worker. She was in a clinical psychology doctoral program and able to work only about 24 hours per week. Madhu indicated that she was "$87,000.00 in debt" and "on the verge of exhausting the remainder of the cash reserve" awarded in the dissolution. She stated that she relied on Sameer's support payment to provide for her and their children's most basic needs.

Madhu declared that it was "imperative" that the court order Sameer to continue to pay "spousal support on an ongoing basis" and "grant [her] request for an upward modification of the current spousal support order" so that she could live at the marital standard of living. Her attached January 22, 2010 income and expense declaration showed that the previous month she had earned $700 in salary or wages and $1,600 in commissions or bonuses and her average monthly income in those categories varied.

Most of the memorandum of points and authorities in support of Madhu's request was devoted to attacking the judgment. As to modification of the judgment's spousal support provisions, counsel for Madhu argued that "no showing of changed circumstances is required due to the fact that the language contained in the Judgment specifically allows for Wife to seek modification of the stated order on or before June 1, 2010." Counsel alternatively contended that, even if a change of circumstances is required, "modification may be grounded on a showing of 'unrealized expectations.' " Citing *In re Marriage of Beust* (1994) 23 Cal.App.4th 24 [28 Cal.Rptr.2d 201], counsel asserted that "[s]o long as the supported spouse has made reasonable efforts to become self-supporting, a change of circumstances may be in the form of 'unrealized expectations' in the ability of the supported spouse to become self-supporting within a certain period of time." Counsel contended that despite Madhu's full-time enrollment in the doctoral program in clinical psychology, "she has not yet met all of the necessary requirements in order to graduate and has, therefore, not yet been able to support herself and the children" and "she is currently only able to earn $9.00 per hour." On behalf of Madhu, counsel requested the court to determine the marital standard of living, set the appropriate level of support, order an upward modification of spousal support that included an *Ostler & Smith* provision, and modify the existing order to require Sameer to continue paying spousal support beyond June 1, 2010, until Madhu "can become self-supporting."

Sameer filed a memorandum of points and authorities and a declaration in opposition to the application for a modification of spousal support. The memorandum represented that the parties had separated in June 2003 and

they had two minor children who resided with Madhu and an adult child attending college who lived with Sameer when not attending college.

Sameer's declaration disclosed that Madhu had undergone a vocational assessment before their May 2007 agreement. The vocational assessment examination report, dated April 4, 2007, indicated that, at that time, Madhu was attending a master's program in social work at California State University, Fresno. She had completed the required practicum hours and would complete her course work at the end of May 2007. Madhu indicated that she still needed to complete her master's thesis and have it signed by her adviser. At one point she indicated that she would be able to earn her MSW degree by August 1, 2007, but then indicated that her master's thesis might not be done until as late as November 2007. The report indicated that Madhu would be employable as soon as she completed her thesis at a salary of between $38,000 and $42,000 per year. Her earning capacity would increase significantly after she had completed the requisite supervised work experience and obtained licensure as a licensed clinical social worker (LCSW). As an LCSW, she could earn from $72,000 to $93,000 per year.

Sameer's declaration stated that forensic CPA Sally White determined in May 2007 that Madhu "required $44,193 annually to maintain [the parties'] marital standard of living." He asserted that "instead of pursuing employment that would permit her to be self-supporting, [Madhu] decided to seek her PhD." His declaration also indicated that under their settlement, Madhu received about $500,000 and substantial unexercised vested stock options and she would receive half of the net proceeds of two properties when sold.

In support of modification, Madhu's counsel argued at the hearing on May 6, 2010, that the family court was "absolutely obligated to go through the [section] 4320 factors to determine whether or not the original support amount met [his] client's needs based on the marital [living] standard." After argument, the court denied the motion because it did not find there was sufficient evidence to modify the spousal support prospectively. The court noted that the motion to set aside the judgment was calendared and "depending on what happens on that motion, it may then be appropriate to revisit the issue of support . . . ." Madhu's counsel asked, "is the Court making a finding that it is not required to analyze the 4320 factors?" The court replied that it was "not making any finding" and it had made its order. A formal order was filed.

On appeal, Madhu argues that the trial court abused its discretion.

## II

### Discussion

#### A. Legal Background

Family Code[3] section 4330, subdivision (a), provides: "In a judgment of dissolution of marriage . . . of the parties, the court may order a party to pay for the support of the other party an amount, for a period of time, that the court determines is just and reasonable, based on the standard of living established during the marriage, taking into consideration the circumstances as provided in Chapter 2 (commencing with Section 4320)." Section 4320 states: "In ordering spousal support under this part, the court shall consider all of the following circumstances . . . ." Those circumstances include, among others, "[t]he extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage" (§ 4320, subd. (a)), "[t]he ability of the supporting party to pay spousal support" (§ 4320, subd. (c)), "[t]he needs of each party based on the standard of living established during the marriage" (§ 4320, subd. (d)), "[t]he duration of the marriage" (§ 4320, subd. (f)) and "[t]he goal that the supported party shall be self-supporting within a reasonable period of time" (§ 4320, subd. (*l*)).

■ Section 3651 provides that, with specified exceptions, "a support order may be modified or terminated at any time as the court determines to be necessary." (§ 3651, subd. (a).) An order for spousal support may not be modified or terminated, however, if the parties have so agreed in a written agreement or in an oral agreement entered into in open court. (§ 3651, subd. (d).)

■ "Modification of spousal support, even if the prior amount is established by agreement, requires a material change of circumstances since the last order. [Citations.]" (*In re Marriage of McCann* (1996) 41 Cal.App.4th 978, 982 [48 Cal.Rptr.2d 864].) "A trial court considering whether to modify a spousal support order considers the same criteria set forth in Family Code section 4320 as it considered in making the initial order. [Citation.]" (*In re Marriage of West* (2007) 152 Cal.App.4th 240, 247 [60 Cal.Rptr.3d 858].) "In other words, in considering a spousal support modification request—. . . given the predicate of a change of circumstances—the trial court looks at the various factors bearing on spousal support under section 4320." (*In re Marriage of Kacik* (2009) 179 Cal.App.4th 410, 422 [101 Cal.Rptr.3d 745].)

---

[3] All further statutory references are to the Family Code unless otherwise stated.

"A material change of circumstances may be in the form of unrealized expectations. (*In re Marriage of Beust*[, *supra*,] 23 Cal.App.4th 24, 29 . . . .) A family law court may not find a change of circumstances, however, in the reconsideration of a circumstance which has not changed since the previous order. (*In re Marriage Farrell* (1985) 171 Cal.App.3d 695, 703 [217 Cal.Rptr. 397].) Circumstances accounted for in the previous order cannot constitute a change of circumstances. (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 1999) ¶ 17:147 . . . .)" (*In re Marriage of Lautsbaugh* (1999) 72 Cal.App.4th 1131, 1133 [85 Cal.Rptr.2d 688].) "There is authority that the parties have the power to decide whether a particular event will or will not be deemed a material change of circumstances for purposes of modification of a support order. (See Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2006) ¶¶ 17.141 to 17.144, pp. 17-32.19 to 17-32.20.)" (*In re Marriage of West, supra*, 152 Cal.App.4th at p. 247.)

"Except on written agreement of the parties to the contrary or a court order terminating spousal support, the court retains jurisdiction indefinitely in a proceeding for dissolution of marriage . . . where the marriage is of long duration." (§ 4336, subd. (a).) "For the purpose of retaining jurisdiction, there is a presumption affecting the burden of producing evidence that a marriage of 10 years or more, from the date of marriage to the date of separation, is a marriage of long duration." (§ 4336, subd. (b).)

B. *Judgment Reduced Spousal Support to Zero Absent Good Cause Showing*

1. Richmond *Order*

██ An order providing for contingent termination of spousal support on a specific date unless, before that time, the supported spouse brings a motion to modify for good cause is denominated a *Richmond* order after the decision of *In re Marriage of Richmond, supra*, 105 Cal.App.3d 352 (*Richmond*). The order in *Richmond* provided that the " 'obligation for spousal support shall continue through the month of September 1981, at which time spousal support shall forever terminate and the jurisdiction of this Court over the issue of spousal support shall terminate, unless prior to September 30, 1981, [the supported spouse] makes a showing of good cause to extend spousal support beyond that date.' " (*Id.* at p. 354.) In upholding the order, the appellate court observed: " 'Limiting the duration of support so that both parties can develop their own lives, free from obligations to each other, is a commendable [judicial] goal.' ([*In re Marriage of Morrison* (1978) 20 Cal.3d

437,] 452 [143 Cal.Rptr. 139, 573 P.2d 41].) And a spousal support order may, in a proper case, be fashioned so as to encourage such supportive self-reliance, and to discourage delay in preparation for or in seeking, or refusal of, available employment." (*Id.* at p. 356.) It stated: "On the record the court might have concluded it *probable* that [the supported spouse] would be supportively self-sufficient at the designated time, and *reasonable* that she, with better access to relevant evidence, make a contrary showing." (*Ibid.*)

"A *Richmond* order is normally issued with the expectation that if the supported spouse exercises reasonable diligence, he or she will have become self-supporting by the date set for support payments to end." (*In re Marriage of Berland* (1989) 215 Cal.App.3d 1257, 1260 [264 Cal.Rptr. 210].) "The effect of a 'Richmond' order is to tell each spouse that the supported spouse has a specified period of time to become self-supporting, after which the obligation of the supporting spouse will cease. . . . A 'Richmond' order psychologically prepares the supported spouse for the time when he or she must be self-supporting. It also places the burden of showing good cause for a change in the order upon the one who is most able to exercise the control necessary to meet the expectations the trial judge had in making the order." (*In re Marriage of Prietsch & Calhoun* (1987) 190 Cal.App.3d 645, 665–666 [235 Cal.Rptr. 587].)

## 2. *The Requirement of a Material Change of Circumstances*

■ "So long as the supported spouse has made reasonable efforts to become self-supporting, a change of circumstances may be in the form of 'unrealized expectations' in the ability of the supported spouse to become self-supporting within a certain period of time. [Citations.] '[T]he question of reasonable expectations is material and a failure to realize them may constitute a change of circumstances justifying modification of the order.' (*Bratnober* v. *Bratnober* (1957) 48 Cal.2d 259, 263 [309 P.2d 441].)" (*In re Marriage of Beust, supra,* 23 Cal.App.4th at p. 29.)

In her reply brief, appellant Madhu asserts for the first time on appeal that "under contract analysis of this particular original judgment, . . . a 'change' of circumstances was not required to bring a motion to extend the spousal support order . . . ." In her opening brief, she states: "Pursuant to a stipulated *Richmond* order, the supported spouse has the burden of showing a change of circumstances."

"Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant. [Citations.]" (*Varjabedian v.*

*City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11 [142 Cal.Rptr. 429, 572 P.2d 43].) " '[T]he rule is that points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before. [Citations.]' [Citation.]" (*People v. Smithey* (1999) 20 Cal.4th 936, 1017, fn. 26 [86 Cal.Rptr.2d 243, 978 P.2d 1171].) The argument that appellant was not required to show changed circumstances was forfeited by her failure to raise it in her opening brief. In any case, the contention is without merit.

The clear implication of the judgment was that, absent unforeseen circumstances, Madhu was expected to complete her MSW degree and be able to be fully self-supporting by June 1, 2010. The judgment provided for the parties to equally share the cost of additional child support for (1) childcare expenses to permit a party to work and (2) childcare expenses to permit appellant Madhu to obtain her MSW degree "only through October 30, 2007." Spousal support commenced on June 1, 2007, but was annually stepped down and reached zero on June 1, 2010, unless Madhu filed "a motion to have spousal support continued and show[ed] good cause as to why the Court should order spousal support to be continued" by that date.

 Black's Law Dictionary states that "[g]ood cause is often the burden placed on a litigant . . . to show why a request should be granted" and it means "[a] legally sufficient reason." (Black's Law Dict. (9th ed. 2009) p. 251.) We reject appellant Madhu's assertion that "[t]he readily apparent and ordinary meaning of 'good cause' " in the present circumstances is a showing that additional support is appropriate based on a reevaluation of the section 4320 factors without any showing of a material change in circumstances, such as "unrealized expectations."[4] Case law indicates otherwise and she did not present any evidence on this point.

---

[4] In her reply brief, appellant Madhu complains that the parties' agreement did not contain a *Gavron* warning, an explicit warning that she was expected to become self-supporting. (See *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705, 707, 711–712 [250 Cal.Rptr. 148] [reversing order terminating spousal support "based on the wife's failure to become gainfully employed or to seek vocational training" where no material change in the circumstances of wife who was still "unemployed and, at best, marginally employable" as she had been at the time of the prior support order and record did not reflect that "unemployed 57-year-old wife had any prior awareness that the court would require her to become self-sufficient"]; *id.* at p. 712 ["Inherent in the concept that the supported spouse's failure to at least make good-faith efforts to become self-sufficient can constitute a change in circumstances which could warrant a modification in spousal support is the premise that the supported spouse be made aware of the obligation to become self-supporting."]; see also § 4330, subd. (b) ["When making an order for spousal support, the court may advise the recipient of support that he or she should make reasonable efforts to assist in providing for his or her support needs . . . ."].) Unlike *Gavron*, the order from which Madhu is appealing is not an order for termination. We have no reason to suppose that Madhu was unaware of the expectation that she become self-supporting by June 1, 2010, since Madhu submitted to a vocational assessment which resulted in a report regarding her job readiness and her potential salary range shortly before agreeing to the

"A motion for modification of spousal support may only be granted if there has been a material change of circumstances since the last order. (*In re Marriage of Kuppinger* (1975) 48 Cal.App.3d 628 [120 Cal.Rptr. 654].) Otherwise, dissolution cases would have no finality and unhappy former spouses could bring repeated actions for modification with no burden of showing a justification to change the order. Litigants ' "are entitled to attempt, with some degree of certainty, to reorder their finances and life style [*sic*] in reliance upon the finality of the decree." ' [Citation.] Absent a change of circumstances, a motion for modification is nothing more than an impermissible collateral attack on a prior final order. [Citation.]" (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 480 [274 Cal.Rptr. 911].)

Even assuming that parties lawfully may agree to a future judicial reevaluation of spousal support without any change of circumstances showing (cf. *In re Marriage of Maxfield* (1983) 142 Cal.App.3d 755, 759 [191 Cal.Rptr. 267] [not judicial error to omit findings of changed circumstances where parties stipulated to spousal support modification and court entered order accordingly]; cf. also § 3591, subd. (c) [court cannot modify spousal support agreement if the parties' written agreement or oral agreement entered into in open court "specifically provides that the spousal support is not subject to modification"]), the judgment in this case did not contain such a provision. (Cf. *In re Marriage of West, supra,* 152 Cal.App.4th at pp. 244, 246–247 [order incorporated stipulation that either party was entitled to seek judicial review of the support award on or after a specified date but reviewing court declined to decide whether language meant the parties could obtain a judicial review of support without any showing of "change of circumstances" since there was a material change of circumstances].) In the usual case, "[t]he change of circumstances rule provides legal protection to marital settlement agreements. (*In re Marriage of Hentz* [(1976)] 57 Cal.App.3d [899,] 901–902 [129 Cal.Rptr. 678].)" (*In re Marriage of Farrell* (1985) 171 Cal.App.3d 695, 703 [217 Cal.Rptr. 397].)

3. *Judgment Did Not Postpone Consideration of Section 4320 Criteria*

■ In a similar vein, appellant Madhu argues that the February 2008 judgment merely postponed the analysis under section 4320 until she brought

---

stipulation. The stipulation provided child support for childcare expenses to permit her to finish her MSW through only the end of October 2007 and annual stepdowns in spousal support over a three-year period, ending with zero spousal support unless she showed "good cause" to continue support. (See *In re Marriage of Gavron, supra,* 203 Cal.App.3d at p. 712 ["awareness of the judicial expectation of future self-sufficiency can arise in numerous contexts"].) In any case, insofar as she is collaterally attacking the judgment, this claim is not cognizable.

a motion to modify. As indicated by Madhu, the *Richmond* court remarked that the lower court's spousal support order "postponed to the future, . . . on what will reasonably be deemed the better evidence of that day, determination of the delicate question whether to continue, or terminate, spousal support." (*Richmond, supra,* 105 Cal.App.3d at p. 356.) But the *Richmond* court did not say that the lower court, in making its spousal support order in the first place, had put off proper consideration of the relevant statutory criteria. "In awarding spousal support, the court must consider the mandatory guidelines of section 4320 [(formerly Civ. Code, § 4801)]. Once the court does so, the ultimate decision as to amount and duration of spousal support rests within its broad discretion and will not be reversed on appeal absent an abuse of that discretion. [Citation.]" (*In re Marriage of Kerr* (1999) 77 Cal.App.4th 87, 93 [91 Cal.Rptr.2d 374], fn. omitted.) The *Richmond* court recognized that the lower court had properly exercised its discretion and squarely placed the procedural and evidentiary burden on the supported spouse to avoid termination of spousal support. (*Richmond, supra,* 105 Cal.App.3d at p. 356.) Here, the superior court could not consider modification absent a change in circumstances.

4. *No Evidence of a Material Change in Circumstances*

Modification of spousal support based on consideration of the section 4320 factors constitutes error where the evidence does not show a material change of circumstances. (*In re Marriage of Dietz* (2009) 176 Cal.App.4th 387, 401–403 [97 Cal.Rptr.3d 616].) "The moving party has the burden of showing a material change of circumstances since the last order was made. (*In re Marriage of Stephenson* (1995) 39 Cal.App.4th 71, 77 [46 Cal.Rptr.2d 8].)" (*In re Marriage of Tydlaska* (2003) 114 Cal.App.4th 572, 575 [7 Cal.Rptr.3d 594].)

██ As to the existence of a change in circumstances, appellant Madhu argued below that there were "unrealized expectations" with regard to her ability to support herself. She now contends that the record shows that the parties' expectation that she would be employed as a social worker at a salary of at least $42,000 was not realized and, when she filed her modification motion, her monthly income was only approximately $700. But her supporting declaration did not show that she diligently acted to achieve financial self-sufficiency and, despite her reasonable efforts, she had been unable to complete her MSW degree, she had been unable to obtain full-time work as a social worker, or she had been unable to find full-time employment at a salary that made her self-supporting. An unrealized expectation of self-support requires "a showing that despite [the supported spouse's] reasonable

efforts she was unable to support herself." (*In re Marriage of Aninger* (1990) 220 Cal.App.3d 230, 241 [269 Cal.Rptr. 388].)

Appellant Madhu argues that the record contains "no evidence of available jobs because [respondent Sameer] failed to submit any evidence that gainful employment exists." She states that "[t]he record contains no current or relevant evidence that any job exists that suits [her] qualifications." She refers to California's economic downturn in 2008 through 2009 and its high unemployment rate in those years. But Madhu did not make any showing that the state's general economic situation impeded her ability to obtain full-time employment in her chosen field at a salary sufficient to be self-supporting. The burden was on Madhu to show reasonable efforts to achieve this objective. (See Evid. Code, §§ 500, 550.)

Madhu also asserts there was a material change in circumstances because she suffered a stroke and her monthly medical expenses and childcare expenses had substantially increased, arguments that she did not make below. She cites to the "Child Support Information" page of her January 22, 2010 income and expense declaration, which was attached to her declaration. The page contained the information that she had a monthly childcare expense of $1,600 to enable her to "work or get job training." It also showed she had incurred additional expenses of $1,070: $70 for the children's health care not covered by insurance, $600 for travel expenses for visitation, and $400 for the children's educational or other special needs. Although unrelated to child support, appellant reported in the section regarding special hardships on the "Child Support Information" page of that income and expense declaration that she had a stroke in March 2009 and had monthly extraordinary health expenses of $1,500. The record before us does not reflect that Madhu "attach[ed] documentation of any item listed" in the special hardship section per the form's directions.

In any event, Madhu never mentioned the stroke or higher personal health care expenditures in her declaration or in argument below. She presented no evidence that any change in her health had affected her ability to complete her MSW degree or obtain or maintain full-time employment. Rather, it was stated in the supporting memorandum that Madhu had enrolled herself in a doctoral program in clinical psychology and she had "decided on this course of action" "so that she may one day support herself and the parties' children as near to the 'Marital Standard of Living' as possible." In our view, a voluntary decision to pursue a doctoral degree rather than entering the working world full time does not constitute a material change of circumstances in the context of this case.

As to childcare expenses, those are a component of child support. (§ 4062, subd. (a)(1) ["The court shall order the following as additional child support: [¶] (1) Child care costs related to employment or to reasonably necessary education or training for employment skills."].) As previously stated, the judgment reflecting the parties' agreement provided for childcare expenses related to work to be equally shared by them. But it provided for a split of childcare expenses to permit Madhu to obtain her MSW degree "only through October 30, 2007." It did not provide for payment of child support to cover childcare expenses incurred to allow Madhu to pursue additional education. Although Madhu now mentions expenses related to their children, the appellate record does not show that she argued or presented evidence to the superior court that her total expenses related to the children had significantly increased since the judgment. In any case, it would be inconsistent with the expectation of self-support to view her childcare expenses incurred to voluntarily pursue a doctoral degree as a change of circumstances if Madhu was currently able to be fully self-supporting but chose not to work. The supported spouse in *Beust*, unlike Madhu, "presented evidence that she ha[d] made reasonable efforts to become self-supporting" but was nevertheless unable to become self-supporting. (*In re Marriage of Beust, supra*, 23 Cal.App.4th at p. 30 [order denying modification of spousal support reversed].)

■ Madhu emphasizes the disparity between her financial situation and the financial situation of Sameer and his new wife, pointing out their respective incomes. "[E]quality of postseparation income is not an element of section 4320 in setting spousal support. (See § 4320.)" (*In re Marriage of Ackerman* (2006) 146 Cal.App.4th 191, 209 [52 Cal.Rptr.3d 744].) A fortiori, an increased inequality of income is not in itself a material change of circumstance. Also, the income of a supporting spouse's subsequent spouse cannot be considered when determining or modifying spousal support. (§ 4323, subd. (b).) Here, Madhu did not argue or present evidence that Sameer's ability to pay spousal support had significantly increased since the February 2008 judgment.

Although Madhu stated in her declaration that she was $87,000 in debt, she did not explain its origin or state facts showing that her debt had significantly increased since the judgment despite her reasonable efforts to become self-sufficient. (Cf. *In re Marriage of Aninger, supra*, 220 Cal.App.3d at p. 242 ["it would defeat the intent and reasonable expectations of the parties that [the supported spouse] would achieve self-support if the court allowed her to manufacture a change in circumstances by going into debt far beyond her

means" in purchasing her new residence].) Madhu asserted she was "on the verge of exhausting" cash reserves awarded in the dissolution but she did not explain where the money had gone or show that her assets had significantly decreased since the judgment despite her reasonable efforts to become self-sufficient.

██ "[I]n determining what constitutes a change in circumstances the trial court is bound to give effect to the intent and reasonable expectations of the parties as expressed in the agreement. [Citations.]" (*In re Marriage of Aninger, supra*, 220 Cal.App.3d at p. 238; see *In re Marriage of Dietz, supra*, 176 Cal.App.4th at p. 399.) "[T]he trial court's discretion to modify the spousal support order is constrained by the terms of the marital settlement agreement. The court may not simply reevaluate the spousal support award." (*In re Marriage of Aninger, supra*, 220 Cal.App.3d at p. 238.)

Nothing in the parties' stipulation, or the judgment entered pursuant to the stipulation, suggested that the parties expected spousal support to facilitate a voluntary decision by Madhu to pursue higher education beyond an MSW degree, if she was able to be self-supporting based on her education and skills in the existing job market. Madhu did not show that despite her reasonable efforts she was unable to support herself. (Cf. *In re Marriage of Aninger, supra*, 220 Cal.App.3d at p. 241 ["[supported spouse] neither alleged nor proved any change in circumstances affecting her ability to become self-supporting"].) It was not an abuse of discretion to conclude that the evidence was insufficient to show a material change of circumstances.

## 5. *Marital Standard of Living*

Madhu states that the "judgment is silent as to the marital standard of living" and "the trial court has never established the marital standard of living." She contends that "the trial court abused its discretion by failing and refusing to establish the marital standard of living and apply that standard as a factor in determining spousal support." She points out that one of the factors under section 4320 is "[t]he needs of each party based on the standard of living established during the marriage." (§ 4320, subd. (d).)

██ "The Legislature has never specified that spousal support must always meet the needs of the supported spouse as measured by the marital standard of living." (*In re Marriage of Smith, supra*, 225 Cal.App.3d at p. 488.) It is a general reference point. (*Id.* at p. 475.) "[T]he trial court may fix spousal support at an amount greater than, equal to or less than what the supported spouse may require to maintain the marital standard of living, in

order to achieve a just and reasonable result under the facts and circumstances of the case." (*Ibid.*)

Ordinarily, the court must make specific factual findings with respect to the standard of living during the marriage. (See § 4332.) But in this case, the amount and duration of spousal support was established by the parties' agreement. "The court, by including the stipulation [regarding spousal support] in its own decree, presumes that the parties arrived at a fair support award, after arm's-length negotiations, that took into consideration all of the circumstances as they then existed." (*In re Marriage of Hentz, supra,* 57 Cal.App.3d at p. 901.) Appellant Madhu cannot now collaterally attack the judgment on the ground that the court did not establish the marital standard of living. (See *In re Marriage of Mulhern* (1973) 29 Cal.App.3d 988, 992 [106 Cal.Rptr. 78]; cf. § 2120 et seq. [relief from judgment].)

6. *No Error or Abuse of Discretion*

"A modification of spousal support cannot be granted in the absence of proof of a change in circumstances. However, the converse is not true; a showing of changed circumstances does not necessarily mandate a modification of spousal support." (*In re Marriage of Poppe* (1979) 97 Cal.App.3d 1, 10 [158 Cal.Rptr. 500].) Even assuming the mere fact that appellant Madhu was a Ph.D. student and not employed full time constituted a material change of circumstances, the appellate record does not establish that the superior court failed to consider all relevant evidence of the section 4320 circumstances that was presented or abused its discretion in denying appellant's motion.

It is a fundamental rule of appellate review that a judgment is presumed correct and the appealing party must affirmatively show error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].) "[A] reviewing court should not disturb the exercise of a trial court's discretion unless it appears that there has been a miscarriage of justice." (*Id.* at p. 566.)

The burden of producing evidence was on appellant Madhu as the moving party. (See Evid. Code, §§ 500, 550.) She did not present evidence of the marital standard of living or her needs based on that standard. Madhu did not show that she had made reasonable efforts to become fully self-supporting before June 1, 2010, but was unable to do so under the prevailing economic conditions. Based on the evidence before it, the court did not abuse its discretion in refusing to modify the judgment to extend spousal support. (Cf. *In re Marriage of Hoffmeister* (1987) 191 Cal.App.3d 351, 364 [236 Cal.Rptr.

543] [continuing disparity between supported spouse's income and expenses does not justify modification]; *id.*, at p. 365 [in addition to showing a change of circumstances consisting of an unrealized expectation that supported spouse would be self-supporting, supported spouse must show efforts to become self-supporting]; *In re Marriage of Sheridan* (1983) 140 Cal.App.3d 742, 749 [189 Cal.Rptr. 622] [supported spouse's failure to diligently seek gainful employment justified denial of spousal support on modification motion]; cf. also *In re Marriage of Shaughnessy* (2006) 139 Cal.App.4th 1225, 1247–1248 [43 Cal.Rptr.3d 642] [discussing meaning of "standard of living" and role of the marital standard in upholding downward modification and eventual termination of spousal support]; *In re Marriage of Berland* (1989) 215 Cal.App.3d 1257, 1260–1261 [264 Cal.Rptr. 210] [if trial court, in considering motion to modify *Richmond* spousal support order, finds that the supported spouse failed "to exercise reasonable diligence to become self-supporting, but that even if reasonable diligence ha[d] been exercised the supported spouse would still not have become fully self-supporting, the court possesses the discretion to extend the duration of the order and to fix the support in the amount the supported spouse would have required if reasonable diligence had been exercised"]; *In re Marriage of McElwee* (1988) 197 Cal.App.3d 902, 909–910 [243 Cal.Rptr. 179] [supported spouse's improvident management of assets, intended as source of income, justified judgment terminating spousal support without reservation of jurisdiction].)

## C. *Pending Motion to Set Aside Judgment*

Appellant argues that the trial court denied the modification motion based on the "premise that the motion was subsumed in a pending motion to set aside the judgment" and this constituted an abuse of discretion. The record does not support her characterization.

## D. *No Reservation of Jurisdiction*

Insofar as appellant Madhu is suggesting that the court should have reserved jurisdiction when it denied the modification motion, we reject it. The court had no authority to make any changes to the judgment with respect to jurisdiction over spousal support since it found the evidence did not warrant modification. (See §§ 4335 ["An order for spousal support terminates at the end of the period provided in the order and shall not be extended unless the court retains jurisdiction in the order or under Section 4336."], 4336, subd. (a) ["Except on written agreement of the parties to the contrary or a court order terminating spousal support, the court retains jurisdiction indefinitely in a proceeding for dissolution of marriage . . . where the marriage is of long duration."].)

## DISPOSITION

The May 6, 2010 order denying modification of spousal support is affirmed. Appellant shall bear costs on appeal.

Rushing, P. J., and Premo, J., concurred.