Filed 3/5/26  Marriage of Lewis CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re the Marriage of KARRI ANN and JACK JIM LEWIS, JR. | |
| KARRI ANN LEWIS,<br><br>    Appellant,<br><br>        v.<br><br>JACK JIM LEWIS, JR.,<br><br>    Respondent. | G065334<br><br>(Super. Ct. No. 22D001605)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Stephen T. Hicklin, Judge. Affirmed.

Karri Ann Lewis, in pro. per., for Appellant.

No appearance for Respondent.

After Karri Ann Lewis filed a petition for dissolution of her marriage to Jack Jim Lewis, Jr.,[1] they entered into a stipulation for judgment in November 2022 (the stipulation) that provided, among other things, Jack would pay Karri $3,000 per month in spousal support. Jack later filed a request to reduce the amount of spousal support based on a change in his employment status. The trial court granted Jack's request in a March 29, 2024 "findings/statement of reasons for decision and orders thereon" (March 29, 2024 order). The court ordered reductions in the spousal support payable to Karri, with support eventually dropping to $0. Later that year, Karri moved to increase her spousal support based on changes in her employment. The court denied Karri's request in a March 10, 2025 "statement of decision and orders after hearing" (March 10, 2025 order).[2]

Although Karri's notice of appeal states she is appealing from the March 10, 2025 order, her appellate briefing appears largely directed to purported errors in the March 29, 2024 order that reduced her spousal support. Because Karri did not timely appeal from that order, she cannot challenge it in this appeal. To the extent Karri's arguments can be construed as challenging the March 10, 2025 order denying her requested increase in support, we conclude the trial court did not abuse its discretion. We therefore affirm.

---

[1] Because the parties share the same last name, we refer to them by their first names, as is customary in family law cases.

[2] For readability, we omit boldface and capitalization in the titles of both the March 29, 2024 and March 10, 2025 orders.

## FACTUAL AND PROCEDURAL BACKGROUND

Karri and Jack were married in January 1996 and separated in January 2022. Following Karri's filing of a petition for dissolution in March 2022, Karri and Jack entered into the stipulation in November 2022. Among other things, the stipulation required Jack to pay $3,000 per month in spousal support beginning from April 1, 2022 (with the amount of retroactive support due for the period between April 1 and the November 2022 stipulation paid at a rate of $200 per month), plus $15,000 in attorney fees (to be paid at the rate of $250 per month). The stipulation also stated Jack assumed responsibility for certain tax debt, which Jack later testified was approximately $220,000.

In March 2023, Jack filed a request for order seeking to change the spousal support and attorney fees he was required to pay. Jack argued there had been a substantial change in circumstances because he had been earning approximately $15,300 per month when he entered into the stipulation, but his employment had been terminated in December 2022. He said he was searching for new employment but, in the meantime, earned only approximately $2,900 per month working as a rideshare driver. Jack asserted his monthly income was insufficient to meet his own living expenses much less to pay the previously agreed $3,000 per month in spousal support and $250 per month in attorney fees.

On March 4, 2024, the trial court held a hearing, at which both parties testified. Karri testified, among other things, to the following: She worked early in their relationship but was not employed full time while she and Jack were married and raising their two children.[3] She is now living with

_____

[3] The children were adults at the time of the hearing.

3

her mother and has no retirement savings. Karri is experiencing health issues that impact her ability to work. At some point, she learned the IRS had placed a tax lien against both of them because Jack did not pay taxes during the marriage; this required her to seek innocent spouse relief. Karri testified she requested and received a domestic violence restraining order when she left the family home. At the time the parties entered into the stipulation, Karri was working part time and earning approximately $1,396 per month; at the time of the hearing, she was working full time for the same company and earning approximately $4,313 per month.[4]

Jack testified, among other things, to the following: He was making approximately $183,000 per year at the time of the stipulation. He was terminated from that job in December 2022 and received only two weeks of severance pay. He had no substantial assets at that time. He started looking for a new job immediately and, in the meantime, drove for rideshare companies; his average earnings as a full time rideshare driver were about $3,200 per month.[5] At the time Jack filed his request for order, he was living in a two bedroom apartment in South Dakota.

Jack also testified he began a new job in the information technology field on August 28, 2023. It began as a six month contract, but it was extended another six months, and he has been told he is on the list to become a full time employee. He currently earns approximately $11,600 per month. Jack testified he agreed in the stipulation to assume responsibility for

---

[4] At the hearing, the trial court issued a *Gavron* warning to Karri. (*In re Marriage of Gavron* (1988) 203 Cal.App.3d 705.)

[5] Jack said he had been working part time as a rideshare driver for a few months before he was terminated from his other job.

4

a tax debt of approximately $220,000. At his prior employment, $2,000 per month was being deducted as an IRS tax levy, but he was not currently making any payments to the IRS or the California Franchise Tax Board.

After concluding the hearing, the trial court filed its March 29, 2024 order. The court found "there have been material changes in the circumstances under which the payments called for in the Stipulation were negotiated" and "[t]hese changes, independently and collectively, are sufficient to warrant a downward adjustment in the amount of spousal support and attorney's fees [Jack] was to pay [Karri], a total of $3,450 per month." The court found unpersuasive Karri's argument that Jack's termination from his prior employment was suspicious and an effort to avoid paying spousal support. The court noted Karri has "no admissible evidence to support her assertion that [Jack's] layoff was orchestrated," and found Jack "has supported his claim to have been laid off by documentary and testimonial evidence including the notice of his layoff and payment records from" his work as a rideshare driver. The court also stated Karri's circumstances had materially changed following the stipulation because she was now earning $3,525 per month, which was "almost the identical amount she was to receive from [Jack] under the terms of the Stipulation." The court then explained its analysis of the factors in Family Code section 4320.[6] The court reduced Jack's spousal support obligation to $500 per month for January 1, 2023 to December 31, 2023; to $1,000 per month for January 1,

_____

[6] Family Code section 4320 articulates a number of factors for a court to consider when determining spousal support. All undesignated statutory references are to the Family Code.

2024 to December 31, 2024; to $500 per month for January 1, 2025 to December 31; 2025; and to $0 per month beginning on December 31, 2025.[7]

In December 2024, Karri filed a request for order seeking to increase spousal support to $4,000 per month.[8] Karri asserted the increase was necessary because she was currently unable to work due to severe injuries, was "currently receiving temporary total disability payments," and is "not expected to be able to return to the same job." She also stated she had "no retirement savings, financial support or savings with very little work experience."

On March 5, 2025, the trial court held a hearing on Karri's request for order. At the hearing, Karri stated she had started working and had moved up at the company, but after the court made its ruling on Jack's request to reduce her support, her pain got progressively worse and she had to go out on temporary disability in April 2024. She said she is "not going to be able to go back to this job." Jack stated he was earning approximately $11,400 per month and still had substantial tax debt.[9]

---

[7] The trial court also stated, "[t]hese amounts are to be used to calculate any existing arrearages and are due in addition to any arrearages due to [Karri] on January 1, 2023," and "[a]ll arrearages are to be paid in the amount of $500 per month for spousal support and $250 per month for attorney's fees in addition to the amounts accruing from the date of this Order until cleared or resolved through settlement."

[8] By the time Karri filed this request for order, a judgment had been entered on September 10, 2024. Although that judgment is not included in the record on appeal, it appears from the trial court's comments in its March 10, 2025 order that the judgment reflected the terms of the court's March 29, 2024 order.

[9] Jack's income and expense declaration from February 13, 2025, indicated he owed approximately $210,000 in "[b]ack taxes."

Following the hearing, the trial court filed its March 10, 2025 order. The court noted the factual and procedural background relevant to spousal support was set forth in the prior March 29, 2024 order, which it attached as an exhibit. The court found Karri had "re-entered the job market and found a job paying her about what Jack was paying her in spousal support at the time of the [March 29, 2024, ruling]," but "[s]everal month's later, Karri's health prevented her from carrying out her job duties and she is now on long-term disability making $2,644 per month in insurance payments." The court stated, "given the totality of the circumstances the change in Karri's health does not justify re-imposing a higher spousal support obligation on Jack." The court noted, "[i]t is always true that a receiving spouse could become unable to work in the future," and "Karri and Jack could have or did take that possibility into account when they entered into their stipulated judgment dated September 10, 2024 in which the [March 29, 2024, ruling] was accepted." The court stated, "by all accounts Karri was already facing health issues when the Stipulated Judgment was entered, so they may not be 'changed circumstances' at all." The court acknowledged it was unfortunate Karri's health did not allow her to work at the job she had obtained but stated, "she has re-entered the job market as she was required to do and she is making $2,644 in disability insurance payments," which "is only $700 or so less per month than she was making when she was working and it is virtually the same amount she agreed to be allocated in the judgment." The court stated, "[i]t does not appear that Karri's health issues were unknown to her, nor are they Jack's responsibility given his inability to pay any additional support as the Court found in" the March 29, 2024 ruling.

The trial court stated it had analyzed the factors in section 4320 in the March 29, 2024 ruling and, although "much of that analysis remains

applicable," it would address a few of the factors in light of Karri's request for order. The court found the supporting party's ability to pay weighed in favor of Jack, stating "[w]hile he is certainly the greater wage earner, he also accepted the greater debt when the couple divorced. He has little excess income, on top of the delinquent and monthly spousal support he was already ordered to pay Karri, to satisfy any additional spousal support." The court further found "both parties are living below the marital standard of living" and "[n]either party has any significant assets." The court also discussed the age and health of the parties, the goal of self-supporting spouses, and that "[t]he parties just recently entered into a judgment by stipulation adopting the Court's" March 29, 2024 order.

On March 27, 2025, Karri filed a notice of appeal, which stated she was appealing from the judgment or order entered by the trial court on March 10, 2025.

DISCUSSION

"[T]o be successful on appeal, an appellant must be able to affirmatively demonstrate error on the record before the court. ""A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error."""" (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822.)

An appellate court is "not bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived." (*In re Marriage of Falcone & Fyke, supra*, 164 Cal.App.4th at p. 830; see also Cal.

8

Rules of Court, rule 8.204(a)(1)(B) [requiring a brief to "support each point by argument and, if possible, by citation of authority"].) Additionally, "'[t]he appellate court is not required to search the record on its own seeking error.' [Citation.] Thus, '[i]f a party fails to support an argument with the necessary citations to the record, . . . the argument [will be] deemed to have been waived.'" (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246; see also Cal. Rules of Court, rule 8.204(a)(1)(C) [requiring a brief to "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"].) "[A]s is the case with attorneys, pro. per. litigants must follow correct rules of procedure." (*Nwosu*, at p. 1247.) "'[S]uch a party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.'" (*Ibid.*)[10]

## I.

### THE MARCH 29, 2024 ORDER

We first address the untimeliness of Karri's apparent attempt to challenge the March 29, 2024 order. In her appellate brief, Karri asserts "[t]his appeal challenges the post-judgment order of March 4, 2024 (filed March 5, 2025) that retroactively reduced [her] spousal-support award and set it to terminate on an accelerated timetable." As an initial matter, we note this statement about what Karri is challenging on appeal underscores the

---

[10] Jack has not filed a respondent's brief. "However, we do not treat the failure to file a respondent's brief as a 'default' (i.e., an admission of error) but independently examine the record and reverse only if prejudicial error is found." (*Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, 1203.)

inadequate record citations in her appellate brief.[11] Karri did not provide citations to the record for what she refers to as the "post-judgment order of March 4, 2024 (filed March 5, 2025)." The record itself makes clear March 4, 2024, was the date of the *hearing* on Jack's request for order, and the order substantively ruling on that request was filed on March 29, 2024. Similarly, March 5, 2025, was the date of the *hearing* on Karri's request for order, and the order substantively ruling on that request was filed on March 10, 2025.[12] In short, Karri's reference to challenging "the post-judgment order of March 4, 2024 (filed March 5, 2025)" appears to be an error.

On appeal, Karri's arguments appear largely directed to the March 29, 2024 order. In a section of her appellate brief regarding "the challenged order and its terms" (boldface and some capitalizations omitted), Karri discusses the order reducing Jack's spousal support obligations, which was the March 29, 2024 order. Karri appears to further attack the March 29, 2024 order by arguing the trial court erred by retroactively modifying spousal support to a date before Jack filed his request for order, failing to properly consider factors under section 4320, relying on misleading and understated

---

[11] Karri's appellate brief includes no record citations in her statement of facts. Although her brief includes some citations to the reporter's transcript in her argument section, it includes no record citations to the clerk's transcript.

[12] It appears from the register of action the trial court entered minute orders on March 4, 2024, and March 5, 2025. But only a copy of the latter is in the record on appeal, and it simply includes some notes about the hearing on Karri's request for order and states the matter is under submission. There is no reason to believe Karri intended to appeal from either minute order.

financial information for Jack, and characterizing Jack's tax debt as a financial hardship.

Karri, however, cannot challenge in this appeal the trial court's purported errors in the March 29, 2024 order that reduced Jack's spousal support obligations *because she did not timely appeal from that order*.[13] Karri could have appealed from the March 29, 2024 order. (See *In re Marriage of Gruen* (2011) 191 Cal.App.4th 627, 637 ["A temporary support order is operative from the time of pronouncement, and it is directly appealable"].) And although she timely appealed from the March 10, 2025 order—which is what she identified on her notice of appeal—she cannot use her appeal from that order to challenge the earlier, March 29, 2024 order.[14] (See *Chalmers v. Hirschkop* (2013) 213 Cal.App.4th 289, 304 [""If a judgment or order is appealable, an aggrieved party *must* file a *timely* appeal or forever *lose* the opportunity to obtain appellate review""].)[15]

On the subject of appealability, Karri argues "[t]his appeal is taken from a post-judgment order modifying spousal support" and it is therefore appealable under Code of Civil Procedure section 904.1, subdivision

---

[13] Even if a notice of entry or file-endorsed copy of the March 29, 2024 order was not served, a timely notice of appeal would have to have been filed within 180 days after entry of that order. (See Cal. Rules of Court, rule 8.104(a)(1)(C) & (e).)

[14] We note the March 29, 2024 order was attached as an exhibit to the March 10, 2025 order, but attaching the March 29, 2024 order as an exhibit does not restart the time to appeal for the March 29, 2024 order.

[15] Even if the March 29, 2024 order were not appealable, Karri never appealed from the judgment entered on September 10, 2024, which apparently reflected the substance of that order. Indeed, Karri's appellate brief does not even mention the September 10, 2024 judgment.

11

(a)(2). She claims "[t]he underlying judgment of dissolution incorporating spousal support was entered previously in the same case, making this post-judgment modification order appealable." Karri does not include any citation to the record supporting her assertion that the March 29, 2024 order was a postjudgment order. As noted above, it appears a judgment was not entered until September 10, 2024, which is *after* the March 29, 2024 order. In any event, even if a judgment had been entered earlier such that the March 29, 2024 order is a postjudgment order, that still would not permit Karri to now challenge it, given that she did not timely appeal from it.

## II.

### THE MARCH 10, 2025 ORDER

To the extent some of Karri's arguments on appeal can be construed as challenging the trial court's March 10, 2025 order denying her request for order, Karri has not demonstrated the court abused its discretion.

"'Modification of spousal support, even if the prior amount is established by agreement, requires a material change of circumstances since the last order. [Citations.]' [Citation.] 'A trial court considering whether to modify a spousal support order considers the same criteria set forth in Family Code section 4320 as it considered in making the initial order. [Citation.]' [Citation.] 'In other words, in considering a spousal support modification request— . . . given the predicate of a change of circumstances—the trial court looks at the various factors bearing on spousal support under section 4320.'" (*In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1475.) "'"The trial court has broad discretion to decide whether to modify a spousal support order. [Citation.]" [Citation.] In exercising that discretion, the court must consider the required factors set out in section 4320.'" (*In re Marriage of Diamond* (2021) 72 Cal.App.5th 595, 601.) "Although by statute

12

the trial court must consider section 4320 factors in deciding whether to modify a spousal support order, the statute does not purport to require the court to address each factor expressly." (*Id.* at p. 602.) "We review the trial court's order for abuse of discretion." (*Id.* at p. 601.)

Even assuming there was a material change of circumstances, Karri has not demonstrated the trial court abused its discretion by denying her request to increase spousal support. The record shows the trial court considered the factors under section 4320. The March 10, 2025 order included a section entitled, "application of the factors identified in Family Code [section] 4320." (Boldface and some capitalizations omitted.) The court noted it previously analyzed the factors in section 4320 in the March 29, 2024 order and "much of that analysis remains applicable." It then proceeded to further address some of the section 4320 factors in light of Karri's request for order. The court addressed Jack's inability to pay, that both parties were living below the marital standard of living, the lack of significant assets of either party, the age and health of the parties, the goal of self-supporting spouses, and that the parties had "just recently entered into a judgment by stipulation adopting the [c]ourt's" March 29, 2024 order.

Karri argues the court relied on understated income figures and contends she had "presented evidence that [Jack's] income was more substantial than he reported, potentially around $200,000 based on the parties' last joint tax return." But these arguments do not show the trial court abused its discretion. Karri's argument appears to be based on her assertion that Jack earned $180,000 to $200,000 per year during their marriage, but this disregards the fact that Jack had been terminated from the job he had when they were married. Karri also asserts the court erred in considering Jack's tax debt, arguing the debt should not have been considered

because he was at fault and acted in bad faith in incurring it. Even if the blame for the tax debt were properly laid at Jack's feet, Karri cites no authority for the proposition the court cannot consider Jack's obligation to pay the debt in determining spousal support. We see no basis to conclude the trial court abused its discretion in doing so.[16] (See § 4320, subds. (c), (e) [noting two of the factors in setting spousal support are "[t]he ability of the supporting party to pay spousal support, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living" and "[t]he obligations and assets, including the separate property, of each party"].)

Karri also argues the trial court failed to adequately consider the marital standard of living, duration of marriage, domestic violence, as well as her needs, earning capacity, and health issues. In other words, Karri argues the court erred by not giving more weight to the factors she believes point in her favor. We cannot agree. As discussed, the trial court has broad discretion in deciding spousal support. Although there may have been factors that could weigh in favor of increasing spousal support, the court did not abuse its

---

[16] Karri asserts Jack "enjoys a comfortable life," but she does not cite any record support for this assertion; nor has she included any analysis of Jack's expenses and debts relative to his income.

14

discretion in denying Karri's request given its weighing of all the circumstances before it, including Jack's inability to pay.[17]

DISPOSITION

The March 10, 2025 postjudgment order is affirmed. No appellate costs are awarded because respondent did not appear.


GOODING, J.

WE CONCUR:


SANCHEZ, ACTING P. J.


BANCROFT, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

---

[17] Karri argues the trial court ignored her evidence of domestic violence. Although the court did not expressly discuss domestic violence in its March 10, 2025 order, the court had not ignored this factor. In the March 10, 2025 order, the court stated much of the analysis of the section 4320 factors in the March 29, 2024 order remained applicable, and the court's March 29, 2024 order explicitly noted that Karri had obtained a restraining order against Jack.