Filed 1/13/23 Marriage of Chinsupakul and Ting CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of PANIDA CHINSUPAKUL and JULIAN C. TING. | H049289 (Santa Clara County Super. Ct. No. 20FL003262) |
| PANIDA CHINSUPAKUL, Respondent, v. JULIAN C. TING, Appellant. | |

In this dissolution of marriage action, Julian C. Ting (Julian) appeals from an order denying his request to modify a temporary support order requiring that he make monthly support payments to respondent Panida Chinsupakul (Panida).[1] He maintains the trial court abused its discretion in a number of ways, including by failing to consider that Panida made excessive credit card charges after the support order was originally entered. For the reasons explained below, we conclude that the trial court did not abuse its discretion in denying the modification request and affirm the order.

---

[1] For consistency with the parties' briefing, we refer to them by first name.

# I. FACTS AND PROCEDURAL BACKGROUND

A. *General Background and 2020 Marital Dissolution Proceedings*

Panida and Julian married in 2001 and separated around 2020. They have two children, who were minors at the initiation of the dissolution proceedings.

Julian is a real estate developer. His business interests include ownership in a real estate development company called PIH, LLC (PIH).[2] Panida was not employed during the course of the couple's approximately 19-year marriage and stayed at home with the children.

In October 2020, Panida obtained a temporary domestic violence restraining order (DVTRO) against Julian and filed a petition for dissolution of the marriage. Among other provisions, the DVTRO required Julian to pay various debts, including the carrying costs of the family's residence in Los Altos and credit card bills as they became due.

Panida's petition for dissolution included a request for spousal support. Panida also requested that the trial court order Julian to pay for her estimated attorney fees and costs totaling $150,000.

On December 1, 2020, Panida submitted a document titled "Petitioner's Statement of Support Calculations" (statement). The statement requested child support of $12,383 per month for the two children and spousal support of $18,178 per month. In support of the requested support amounts, the statement attached a calculation from the DissoMaster software program[3] that used figures from the couple's joint tax return submitted in 2019. The statement asserted that Panida was not employed and had no independent source of income.

---

[2] In the trial court, the parties disputed the nature and extent of Julian's business interests and his sources of income. The record does not reflect that the trial court made any definitive ruling on those issues prior to the issuance of the order that is the subject of this appeal, and we need not resolve them in order to decide this appeal.

[3] " 'The DissoMaster is a privately developed computer program used to calculate guideline child support under the algebraic formula required by [Family Code] section 4055.' " (*In re Marriage of Usher* (2016) 6 Cal.App.5th 347, 352, fn. 5.)

2

Panida also submitted on December 1, 2020, a supplemental declaration that stated that her request for approximately $30,000 in child and spousal support per month was an "interim" request based on the 2019 annual income, because Panida had not yet ascertained the exact nature and extent of Julian's income and his sources of funds. The supplemental declaration attached the DissoMaster calculation based on the joint 2019 tax return as well as a copy of the 2019 tax return. The supplemental declaration discussed the couple's historical earnings during the marriage and the adjusted gross income that they reported on their joint tax returns from 2012 through 2019. The adjusted gross income reflected on the 2019 federal tax return was $1,145,488. The declaration stated the 2020 earnings were "unknown at this time" and estimated they would be "a similar amount as 2019."

On December 1, 2020, Julian filed a response and declaration opposing Panida's request for a permanent domestic violence restraining order and denying the assertions she made in her request for the DVTRO. Addressing Panida's request for temporary child and spousal support, Julian asserted, inter alia, that his real estate development business had been "severely negatively impacted" by the COVID-19 pandemic. He stated that his company PIH "develops and then sells real estate/housing units" and that it currently had "no finished inventory" and his last source of business income ended on July 31, 2019. Julian asserted that PIH had a "cash flow of approximately [negative] $17,000 in 2020" (boldface omitted). He stated that his only income is derived from "passive income" from mutual fund investments that were currently frozen under the October 2020 DVTRO. He requested that the trial court unfreeze certain accounts so he could use them to pay expenses.

Additionally, on December 2, 2020, Julian filed an income and expense declaration. That declaration, which Julian signed under penalty of perjury, indicated, inter alia, he had an average monthly investment income of $7,068, but the "character of dividend/interest income has yet to be determined." His declaration also indicated he was

3

self-employed and that his average monthly income from self-employment, after business expenses for all businesses, was negative $1,437 and further explained that "PIH, LLC has no foreseeable income for the next 12-24 months and [negative] $17,240 in 2020 net income. PIH, LLC requires capital contributions for taxes and expenses to keep the company solvent." He attached an "Income Statement" for the 11 months ending in November 2020 that indicated PIH's net income was negative $17,240.87.

On December 3, 2020, the parties appeared in the trial court for a hearing related to Panida's request for a restraining order. Counsel represented to the court that the parties had met and conferred and had agreed to continue the hearing as it pertained to the restraining order. Regarding the question of temporary financial support, Panida's counsel asserted that Panida was requesting $12,000 in child support and $18,000 in spousal support, for a total of $30,000 in monthly support.

The trial court questioned Panida's counsel on a temporary support number that would be sufficient for the "next two or three months," and counsel responded that $20,000 per month would be sufficient. Julian's counsel disputed that amount of support and asserted his "business income is negative [$]17,000."

At the conclusion of the December 3, 2020 hearing, the trial court ordered Julian to pay $15,000 per month to Panida in unallocated temporary child and spousal support, as of December 1, 2020. The court believed "some form of interim support" was appropriate. Nevertheless, it was not inclined to order "anything that depends upon [the court] doing a deep dive into what the current assets are or making certain assumptions as to what the holdings of [Julian] might be but simply to create a fund sufficient for the petitioner to support herself" until the hearing on Panida's request for a restraining order, based on her allegations of domestic violence.

Additionally, the trial court left in place the DVTRO, which required, inter alia, that certain financial accounts remain frozen, Julian pay credit card bills upon coming due, and Julian maintain Panida's access to certain bank accounts and credit cards,

4

including an American Express platinum card. The court continued to February 2021 the hearing on Panida's requests for a restraining order and attorney fees.

On March 4, 2021, the trial court filed a written order after hearing, which stated the findings expressed at the hearing by the judicial officer who had presided over the December 3, 2020 hearing.[4] Panida served the order on Julian on March 10, 2021.[5]

B. *Julian's Motion for Reconsideration or Modification of the Support Order*

On January 4, 2021, Julian filed a number of papers in support of what he described as a "Motion for Reconsideration and Alternatively Motion to Modify" (motion). Julian requested that the trial court either reconsider or modify the trial court's December 3, 2020 support order requiring him to pay $15,000 monthly in temporary unallocated support.

In support of his motion, Julian submitted a declaration (January 2021 declaration) in which he asserted there were a number of new facts and circumstances that had been unknown to the court at the December 3, 2020 hearing. For example, he stated Panida had "made over $16,673.86 in charges on joint American Express and Capital One cards, the expenses for which [he was] to pay under the Court's ruling on December 3, 2020," and which included a charge by Panida's attorney in the dissolution proceedings. Julian stated that he had paid approximately $43,000 in expenses since December 3, 2020. He disputed Panida's claims that he had access to "bank accounts and international assets/funds" and asserted he presently only had access to $49,823.81 in liquid funds that were in a certain number of unfrozen bank accounts.

Additionally, Julian stated in his January 2021 declaration that his business income was "at least" negative $17,000 "as set forth in [the] Profit and Loss Statement"

---

[4] Due to the retirement of the judicial officer who had presided at the December 3, 2020 hearing, Judge Brooke Blecher signed the March 4, 2021 order.

[5] We grant Panida's motion to augment the record with the proof of electronic service filed in the trial court.

attached to his income and expense declaration filed in December 2020. He further asserted "I expect that by the date of any hearing on my motion, I will have received my K-1, which will verify that this year I experienced a significant business loss due, in large part, to the COVID-19 pandemic." Julian requested, inter alia, that the trial court amend its prior order by setting temporary child and spousal support to zero "pending an evidentiary hearing" and unfreeze certain financial accounts identified in the DVTRO.

On February 2, 2021, Julian filed a response to Panida's petition for dissolution of marriage that included a request that the court end its order that he pay temporary support to Panida. Shortly thereafter, on February 12, 2021, Panida filed a document titled "Petitioner's Update to the Court" (update). In her update, Panida requested that the existing financial orders, including the $15,000 monthly support payment ordered in December 2020, remain in effect.

On February 17, 2021, in advance of the hearing scheduled for the following day, Julian filed both a response to Panida's update and an updated income and expense declaration for himself. His response generally opposed Panida's assertions of his financial interests and requested the trial court set "support at zero pending further written agreement of the parties or court order." Additionally, he asserted he had no income available to pay support. He stated his "two income producing LLCs had net negative income in 2020." He noted that both parties were using the same American Express card to pay their expenses and their respective attorney fees. He stated that "[w]ithout amending the current orders, by March 1, 2021, [he] will be unable to pay his attorneys, the community expenses, or his significant credit card bills."

Julian's updated income and expense declaration, dated February 17, 2021, and signed under penalty of perjury, was substantially the same as his prior declaration from December 2020. His February 2021 declaration stated PIH "has no income foreseeable for 12-24 months and [negative] $17,240 net income in 2020" and that "[c]apital contributions are required for taxes, expenses, new investments [and] inventory." His

6

declaration attached a document titled "Income Statement" for the 12 months ending in December 2020 for PIH reflecting a negative income of $17,240.88. He also attached a separate income statement for a company called Clarum 73 Amador, LLC, which reflected a net income of [negative] $924. Julian indicated Panida's income was "TBD." He also stated his real and personal assets amounted to $3,379,596. Regarding expenses, he stated total expenses on average per month were $39,388.

A status conference occurred on February 18, 2021, before a different bench officer (Hon. Brooke A. Blecher) than the judge who had presided over the December 3, 2020 hearing. At the February 2021 status hearing, the trial court extended the DVTRO to April 2021, ordered all current financial orders to remain in effect, and set a hearing on April 21, 2021, for Julian's motion for reconsideration/modification.

In anticipation of the April 21, 2021 hearing, Panida filed a number of documents, including an income and expense declaration, which she signed under penalty of perjury, that indicated she was not working, the income she was receiving consisted of $9,000 in average monthly spousal support, and her estimated average monthly expenses were approximately $35,000.

Panida also filed a declaration dated April 12, 2021 (April declaration). This declaration, signed under penalty of perjury, asserted that Julian had not complied with the court's financial orders. Panida requested that the trial court maintain the existing financial orders, including that Julian pay $15,000 in monthly support. The exhibits attached to Panida's declaration included two reports from a forensic accountant, who stated he had analyzed a number of financial transactions and accounts related to the marriage, as well as foreign assets allegedly transferred to Julian's accounts.

In reply, Julian filed a declaration dated April 19, 2021, that asserted he was receiving "AMEX bills showing huge charges that [Panida] made for luxuries, her attorneys and her accounting experts" and that he had started "borrowing money from family after [he] ran out of credit line funds in February."

7

Julian further stated in his declaration that his real estate development business had suffered and he had a "net loss" in 2020 due to the COVID-19 pandemic and the "complete shutdown of [his] projects during most of 2020." He stated that he had been forced to borrow from his family to pay his and Panida's living expenses and was now indebted to his parents and sister for "nearly $255,000."

Julian did not file a new income and expense declaration.

*C. April 21, 2021 Hearing and Post-Hearing Briefing*

The trial court heard Julian's motion for reconsideration/modification on April 21, 2021. No witnesses testified at the April 21, 2021 hearing, and the trial court did not admit any exhibits into evidence.

Julian's counsel[6] addressed the court and stated that she was moving to strike portions of Panida's April declaration and certain of its exhibits as hearsay and because "the information relied upon in the declaration in those exhibits were illegally obtained evidence in violation of Penal Code section 502."[7] Julian's counsel argued, inter alia, that Panida had "illegally hacked" into Julian's private server and had provided certain financial information from it to Panida's forensic accountant.

Alternatively, Julian's counsel argued the support order should be modified because Julian's real estate income was "incredibly bumpy" and "there is no income" and he was "operating for a loss." Julian's counsel further argued that Panida had engaged in

---

[6] At the time of the hearing on April 21, 2021, Julian's counsel had recently substituted into the case. On April 1, 2021, the parties appeared for a hearing related to a motion filed by Panida to disqualify Julian's prior counsel. The trial court granted Panida's motion and her request for sanctions. At that hearing, the trial court indicated the current case calendar would remain unchanged. A few days after the April 1, 2021 hearing, Julian filed a substitution of attorney that indicated he had retained a new attorney.

[7] "Section 502 of the California Penal Code prohibits unauthorized access to computers, computer systems, and computer networks, and provides for a civil remedy in the form of compensatory damages, injunctive relief, and other equitable relief." (*Sunbelt Rentals, Inc. v. Victor* (N.D. Cal. 2014) 43 F.Supp.3d 1026, 1032.)

exorbitant spending on the American Express account by charging nearly $175,000, mostly to pay her attorney and the forensic accountant.

The trial court asked Julian's counsel whether she had submitted a "calculation for support." Julian's counsel responded that Julian had previously submitted an income and expense declaration in February 2021, the information had not changed, and there was still "no income." Julian's counsel argued the "most inequitable part" of the December 2020 order entered by the prior judicial officer was that Julian had to continue paying the credit cards, which Panida had "completely abused and there [was] evidence to that." The trial court took the matter under submission and indicated it would accept additional briefing on the matter of the civil action filed by certain of Julian's family against Panida and Julian's assertion that she had violated Penal Code section 502.

Post-hearing, the parties filed supplemental briefs addressing Penal Code section 502 and Julian's request that the court strike some of Panida's evidence. Panida argued that Julian had failed to support his allegations that she had violated Penal Code section 502. She disputed that she had violated any law when she obtained information about Julian's "overseas wealth" and denied that she had hacked into any computers or computer systems to obtain information regarding Julian's financials. She noted that Julian's family members had not yet filed any civil action against her although they had threatened to do so. She disputed that her accountant's declarations were hearsay and noted that he had been available at the hearing to testify. She stated that the trial court had properly based support on the 2019 tax return, citing *In the Marriage of Loh* (2001) 93 Cal.App.4th 325.[8]

Julian filed a supplemental brief on May 7, 2021, accompanied by a declaration from his attorney. Julian asserted that Panida had "resorted to illegal conduct" to obtain

---

[8] "In *Loh*, the Fourth District set forth the principle that income tax returns are presumptively correct as to parent's income in a child support proceeding." (*In re Marriage of Hein* (2020) 52 Cal.App.5th 519, 540.)

9

financial information, which he had only discovered after the December 2020 hearing at which the trial court set the temporary support order. The brief stated that Panida had "revealed in her discovery responses produced on February 16, 2021, that the basis of her financial allegations was information illegally obtained by hacking into [Julian]'s locked and password protected private server in the family home." (Boldface omitted.) The attorney declaration attached excerpts from the December 3, 2020 hearing and excerpts of Panida's verified discovery responses.

D. *May 11, 2021 Order Denying Julian's Request to Reduce Support*

The trial court issued a written decision on May 11, 2021. Relevant to the claims raised in this appeal, the trial court found that Julian did not meet his burden of showing that Panida had violated Penal Code section 502. It stated that Julian did not support his claim with the requisite particularity and his allegation that Panida had admitted to illegal conduct in "obtaining [Julian]'s family business documents" was not substantiated by the evidence before the court. The court further observed it had not received evidence that the family members were "owners of the data" at issue.

Additionally, the trial court denied Julian's motion for reconsideration of the December 2020 support order, finding there were no new facts or cognizable arguments that would satisfy Code of Civil Procedure section 1008. The trial court stated that Julian had raised the "same arguments" at the December 2020 hearing that "he is making now."

Turning to Julian's request for a modification of support, the trial court noted that it had the authority to modify support pursuant to Family Code section 3651, subdivision (a), if there were a " 'material change of circumstances.' " (*In re Marriage of Bodo* (2011) 198 Cal.App.4th 373, 388 (*Bodo*).) The trial court summarized Julian's arguments: "[Julian] contends there has been a material change in circumstance since the orders resulting from the December 3, 2020 hearing, because he can no longer afford to pay support in addition to the community's expenses. Specifically, [Julian] argues that he paid $40,000 in community expenses in addition to support. Furthermore, as a result

10

of the Court freezing his brokerage accounts, he claims to have only $49,823 in liquid funds at his disposal. In support [Julian] provides a [profit and loss] statement showing a total loss of $17,240 in 2020. There is no indication he provided the Court with a K-1 statement to verify his business losses as stated in his moving papers."

The trial court noted that it had "previously considered his negative earnings at the December 3, 2020 hearing" and observed that Julian had filed his December 1, 2020 income and expense declaration two days before that hearing. The trial court found that there was "no indication [Julian] provided updated information or documentation concerning his income (or lack thereof)."

The trial court rejected Julian's argument that he could not pay both support and the community's expenses because the trial court had "previously considered his assets, lack of income, and total net worth in setting unallocated support at $15,000 per month." The trial court noted the DVTRO had required him to pay the community's expenses. The trial court found that "[b]ased on the documentation submitted, [Julian] has not provided any evidence demonstrating his lack of ability or opportunity to earn his prior income." The trial court concluded that Julian had failed to show a material change of circumstances that warranted modifying the support order. It therefore denied Julian's motion to modify child and spousal support.

E. *Notice of Appeal and Proceedings in this Court*

Julian filed a notice of appeal on June 9, 2021. His notice of appeal stated that he was appealing from the orders entered on March 4, 2021, and May 11, 2021. The March 4, 2021 order memorialized the orders made at the December 3, 2020 hearing, including the order that Julian pay $15,000 per month in temporary unallocated support.

During the pendency of this appeal, this court granted Panida's motion to dismiss Julian's appeal of the March 4, 2021 temporary support order as untimely. In his opposition to Panida's motion to dismiss, Julian conceded his appeal of the March 4,

2021 order was not timely and asserted he had "inadvertently identified" that order in his notice of appeal.[9]

## II. DISCUSSION

In his opening brief, Julian addresses the underlying temporary support order (pronounced on December 3, 2020 and filed in March 2021) and asserts we have jurisdiction to review that order, which he argues was erroneous and unfair. As noted above, subsequent to the filing of his opening brief, this court dismissed the appeal of that support order as untimely.

Julian's appeal of the temporary support order was not timely and we have no jurisdiction to review it. Julian in his reply brief does not contend otherwise. (Cal. Rules of Court, rule 8.104; see also *K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 881.) We therefore limit our review of Julian's arguments on appeal to those related to the May 11, 2021 order. We do not address the underlying support order other than to provide context for the May 11, 2021 order.

We are aware that the parties are engaged in ongoing litigation involving a number of matters. We emphasize that our decision in this appeal is limited to the May 11, 2021 order in the dissolution proceedings and is based solely on the record that was before the trial court when it issued that order.[10]

---

[9] On January 31, 2022, Panida requested sanctions in her reply to Julian's opposition to her motion to dismiss the appeal. She asserted Julian's appeal and his opposition to her motion to dismiss were frivolous. She requested we impose sanctions in the amount of over $45,000 in attorney fees. Panida did not file a separate motion for sanctions and did not provide any declaration supporting her fee request. As Panida's request for sanctions does not comply with the California Rules of Court, we decline to consider its merits. (See Cal. Rules of Court, rule 8.276(b).)

[10] Julian filed a request for judicial notice on October 26, 2021 (request) that attaches as an exhibit an order of preliminary injunction entered on September 14, 2021, that was entered in a separate civil action (Super. Ct. Santa Clara County, 2021, No. 21CV381110). The document attached to Julian's request postdates the events at issue in this appeal and was not in the record before the trial court when it issued the order that is

Addressing the May 11, 2021 order, Julian asserts the trial court abused its discretion by (1) denying his motion to strike certain evidence submitted by Panida (including the reports from her forensic accountant), (2) denying his request to modify the $15,000 in temporary support payments in light of Panida's excessive credit card charging and misconduct, and (3) failing to set an evidentiary hearing despite his "repeated" requests to do so and in violation of his due process rights.

Panida counters that the orders challenged by Julian are not appealable and we should dismiss this appeal. Alternatively, she contends that the trial court did not abuse its discretion in the portion of the May 11, 2021 order that denied Julian's motion to modify support.

A. *Appealability*

As the existence of an appealable judgment or order "is a jurisdictional prerequisite to an appeal" (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126), we first address the appealability of the May 11, 2021 order. (See *In re Marriage of Grimes & Mou* (2020) 45 Cal.App.5th 406, 418.)

A trial court order that refuses to modify a temporary support order is an appealable order. (See *In re Marriage of Campbell* (2006) 136 Cal.App.4th 502, 507.) As noted by this court in *Campbell*, " 'Even if it is technically interlocutory, an order dispositive of the rights of the parties in relation to a collateral matter, or directing payment of money or performance of an act, may be subject to direct appeal. For this reason, it has long been established that severable portions of a judgment may be separately appealed, particularly in dissolution cases.' " (*Id*. at pp. 505–506.) Similar to *Campbell,* Julian's motion to modify support "was dispositive of the parties' rights with

the subject of this appeal. We deny Julian's request, as the document is not necessary to our resolution of this appeal. (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6.)

13

respect to the collateral issue of temporary support" and, as such, is an appealable order. (*Id*. at p. 506.)

Nevertheless, Panida asserts that the May 11, 2021 order denying Julian's request to modify the support order is not appealable. Panida notes that an order denying a motion for reconsideration filed pursuant to Code of Civil Procedure section 1008, subdivision (a), is not appealable. (See Code Civ. Proc., § 1008, subd. (g).) While acknowledging Julian did in fact seek modification of the support order (as well as reconsideration), Panida states that there is no appealable order because Julian filed his request for modification "as a singular motion to reconsider and modify" rather than as a separately filed motion. Panida asserts that because his request was "not separately pled or filed" and was "inextricably linked to" his motion for reconsideration, we must dismiss the entire appeal.

We disagree. Panida offers no relevant authority for her appealability argument premised on Julian's filing of a single motion that included a request to modify the temporary support order. Her reliance on *Glade v. Glade* (1995) 38 Cal.App.4th 1441, 1457, does not support her contention. That case involved a motion to reconsider a grant of summary judgment for a family trust related to a foreclosure action. (*Id*. at p. 1448.) It did not address child or spousal support payments and does not advance her argument that the subject order denying his request for modification is not appealable.

Panida also generally contends Julian may not appeal from the evidentiary rulings subsumed in the May 11, 2021 order and the denial of his motion to strike. However, to the extent Julian's evidentiary claims are intertwined with his claims for reversal of the order denying his request for modification, we address those below.[11]

---

[11] Julian concedes the portion of the order denying his motion for reconsideration is not an appealable order. We decline to treat the purported appeal of that nonappealable order as a petition for writ of mandate. (See *Olson v. Cory* (1983) 35 Cal.3d 390, 401.) Accordingly, we focus our analysis on the portion of the order denying his request to modify the support order.

Having confirmed our jurisdiction over the trial court's order denying his request for modification of the temporary support award, we turn now to the merits of Julian's challenge to that order.

B. *Order Denying Julian's Modification Motion*

1. Standard of Review and Legal Principles

We review an order modifying (or refusing to modify) a spousal or child support order for abuse of discretion. (See *Bodo*, *supra*, 198 Cal.App.4th p. 384.) "When conducting an abuse of discretion review, appellate courts consider (1) whether the trial court's factual findings are supported by substantial evidence, (2) whether the trial court followed applicable legal principles, and (3) whether the trial court reasonably exercised its discretionary authority—that is, whether any judge reasonably could have made such an order." (*In re Marriage of Hein* (2020) 52 Cal.App.5th 519, 529.)

Family Code section 3651, subdivision (a), provides that, subject to certain exceptions, "a support order may be modified or terminated at any time as the court determines to be necessary." A "change of circumstances is required for the modification of support orders, including temporary ones." (*In re Marriage of Samson* (2011) 197 Cal.App.4th 23, 29.) " ' "As a general rule, courts will not revise a child support order unless there has been a '*material* change of circumstances.' . . . [Citation.] The majority view is that the same general rule applies to temporary spousal support." ' " (*In re Marriage of Freitas* (2012) 209 Cal.App.4th 1059, 1068 (*Freitas*).) "[T]he chief reason for the changed circumstances rule is to 'preclude relitigation of the same facts.' " (*Id*. at p. 1071, italics omitted.)

As noted by this court, " 'the moving party has the burden of showing a material change of circumstances since the last order was made.' " (*In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1480 (*Khera & Sameer*).) " 'Otherwise, dissolution cases would have no finality and unhappy former spouses could bring

repeated actions for modification with no burden of showing a justification to change the order.' " (*Id.* at p. 1479.)

A change of circumstances may include, for example, an " 'increase or decrease in either party's income available to pay child support.' " (*In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, 556.) Regarding child support modification, " '[s]o long as the statewide statutory formula support requirements are met (Fam. [Code,] § 4050 et seq.), the determination is made on a case-by-case basis and may properly rest on fluctuations in *need* or *ability to pay*.' " (*Ibid.*) " 'Circumstances accounted for in the previous order cannot constitute a change of circumstances.' " (*Khera & Sameer*, *supra*, 206 Cal.App.4th at p. 1476.) "The changed circumstances rule is not to be applied mechanistically or without exception." (*Freitas*, *supra*, 209 Cal.App.4th at p. 1069.)

With these general principles in mind, we turn to Julian's arguments.

2. Analysis

As the trial court correctly observed, Julian was required to show a " ' "material change of circumstances" ' " in order for the court to modify the support order. (*Bodo*, *supra*, 198 Cal.App.4th at p. 376.) The court decided that Julian had failed to make this showing and found that many of the circumstances he presented in his January 2021 motion for modification (for example, that he had no income and his real estate development company PIH had negative income) were the same as those he had presented in December 2020.

We agree with the trial court that Julian's assertions that he had no income to pay support were insufficient to meet his burden of showing a material change of circumstances subsequent to the issuance of the original support order. (See *Khera & Sameer*, *supra*, 206 Cal.App.4th at p. 1476; see also *In re Marriage of Lautsbaugh* (1999) 72 Cal.App.4th 1131, 1133.) Additionally, Julian does not dispute in this appeal, and the record supports, that Panida had no paid employment and had no other sources of income aside from monthly support from Julian. Further, there was no evidence that the

household expenses had materially changed, with Panida reporting average monthly expenses of approximately $35,000. (Cf. *In re Marriage of West* (2007) 152 Cal.App.4th 240, 247 [deciding that wife's choice to "take a different career path . . . was a material change of circumstances justifying the court in at least considering whether to modify spousal support" and noting that wife "was in fact employed and was beginning to earn commissions"].)

Julian principally argues that the trial court abused its discretion in refusing to modify the support order because after the December 3, 2020 hearing, Panida made "excessive credit card charges" which included charges for her own litigation expenses. But Julian fails to connect this spending with relevant authority that would support a modification of the support order. To the extent he argues the excessive credit cards exacerbated his financial situation, the trial court had already considered his assertion that he had no income prior to the December 2020 hearing when it ordered the amount of temporary support. Julian has not persuaded us that the trial court abused its discretion in deciding that Panida's credit card charges did not constitute a material change in circumstances supporting modification of the temporary support order.

We further observe that Julian does not appear to argue that a court order (or other authority) prevented Panida from making such credit card charges. Indeed, the DVTRO order then in effect required him to provide her access to certain credit cards and did not place any explicit limitations on her use of those credit cards. While it is true that Panida had separately sought $150,000 in attorney fees and costs and the trial court had reserved that issue, the temporary support order did not foreclose her from making those charges on the credit card. It is also undisputed that Julian was responsible for paying the family debts as outlined in the DVTRO entered in October 2020, which remained in effect at the time of the May 2021 hearing.

Julian emphasizes that the family court is a court of equity and that courts may look to the supported spouse's conduct when deciding whether to modify support. Citing

17

*In re Marriage of Schaffer* (1999) 69 Cal.App.4th 801, 812, Julian asserts the trial court erred because it "focused solely on Julian's income without consideration of Panida's bad conduct," which he describes as her "excessive credit card charges." *Schaffer* is distinguishable. The case involved an appeal by a supported spouse after the trial court denied her postjudgment motion to continue spousal support and terminated her spousal support. (*Id*. at p. 803.) The appellate court affirmed the denial of continued spousal support based on its determination she had shown an unwillingness to become self-supporting over a period of 15 years. (*Id*. at p. 812.) The Court of Appeal decided the trial court did not abuse its discretion by looking at the "whole" of that conduct. (*Ibid*.) Here, by contrast, it was not Panida's burden to show support should continue but rather Julian's burden to show that it should not.

Julian appears to assume Panida's wrongful conduct was undisputed. However, the trial court did not make a finding that Panida had acted unlawfully. To the contrary, the trial court decided that Julian's allegation that Panida had admitted to illegal conduct was unsupported based upon the evidence presented to the trial court as of May 2021.[12]

We are not persuaded the trial court abused its discretion in denying Julian's motion to modify the award of temporary support based on his failure to show changed circumstances.[13]

---

[12] The record does not reflect that the trial court in May 2021 made any definitive ruling as to Panida's alleged unlawful access of any computers or computer systems to obtain information regarding Julian's financials or related to other members of Julian's family. Instead, the trial court concluded, based on the evidence and information before it, that Julian failed to meet his burden of showing Panida had "illegally obtained financial documents." Our review of whether the trial court abused its discretion in issuing the challenged order is limited to the findings the court made based on the information it had before it at the time it issued the order.

[13] Having concluded the trial court did not err in its decision denying Julian's request to modify support, we need not address Panida's claim that Julian was foreclosed from bringing his modification motion under the disentitlement doctrine.

18

C. *Additional Claims*

Julian raises additional claims related to certain evidentiary and procedural issues. "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) Applying this fundamental principle, we reject Julian's claims that the trial court made reversible evidentiary and procedural errors.

Julian contends the trial court erred in denying his oral motion to strike evidence that targeted certain portions of Panida's declaration filed on April 12, 2021, in advance of the April 21, 2021 hearing. He generally claims that the trial court "relied on hearsay and illegally obtained information to justify" its denial of his motion for modification.

We disagree. The record does not reflect the trial court relied on the portions of Panida's April declaration he challenges, and Julian provides no record citations to support his assertion that the court relied on those statements. We therefore are not persuaded that any evidentiary errors occurred, let alone any that warrant reversal based on the circumstances here.

Julian also claims the trial court "refused to set an evidentiary hearing" at the April 21, 2021 hearing. The record does not support his assertion. Rather, it reflects that, on April 21, 2021, Julian's counsel appeared on his behalf for his motion (filed in January 2021) and stated she "had the case for just a little over two weeks as of today" following the disqualification of Julian's prior counsel. During her argument to the trial court, Julian's counsel requested the trial court "read" Julian's reply papers. Julian's counsel did not request an evidentiary hearing or seek to offer any witnesses or evidence at that time. Indeed, she had asserted earlier in the hearing that she was "in the process of obtaining an expert." Julian does not assert any evidentiary hearing was required prior to

the trial court's ruling on his motion. Given this record, Julian has failed to show any error related to the absence of an evidentiary hearing.

Finally, we reject Julian's conclusory argument that the trial court violated his due process rights. While he generally invokes the concept of due process, he does not develop his claim with any specificity or support it with any relevant legal authority that reflects the circumstances in this case. (Cf. *In re Marriage of Seagondollar* (2006) 139 Cal.App.4th 1116, 1130–1131 [deciding trial court violated a former spouse's due process rights based on cumulation of errors, including the trial court not allowing him o "continue the hearing a mere three days to permit [former spouse] to present his rebuttal expert witness"].) Moreover, Julian does not dispute he had notice of, appeared at, and had the opportunity to present evidence at the hearing on his request for modification, although he had no evidence or further information to offer other than what he had submitted previously to the court.

For all these reasons, we conclude that Julian has not met his burden on appeal of demonstrating reversible error in the trial court's order denying his request for modification of the support order. We therefore affirm the challenged order.

## III. DISPOSITION

The May 11, 2021 order denying the request for modification is affirmed. Respondent is entitled to recover her reasonable costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

_____
                                Danner, J.

WE CONCUR:


_____
Greenwood, P.J.


_____
Wilson, J.


**H049289**
*Chinsupakul v.Ting*